THE PEOPLE OF THE STATE OF NEW YORK EX REL. THE SEMINARY OF OUR LADY OF ANGELS, APPEL-LANT AND RESPONDENT, v. THOMAS M. BARBER AND OTHERS, AS ASSESSORS, AND GALEN MILLER, AS SUPERVISOR OF THE TOWN OF LEWISTON, NIAGARA COUNTY, NEW YORK, APPELLANTS AND RESPONDENTS.

42   27
58   381
42   27
6ap 89
42   27
32ap202
42h  27
f 63ad185
63ad583
63ad584

*Taxation — exemption of buildings, and the lots on which they stand, of colleges —
1 Revised Statutes, 388, section 4, subdivision 3, as amended by chapter 397 of 1883 —
duty of assessors in entering property omitted from the roll of last year.*

The policy of this State, as displayed in the laws providing for the exemption from taxation of the property of colleges, incorporated academies and other seminaries of learning, has been from an early day to encourage, foster and protect corporate institutions of religious and literary character, because the religious, moral and intellectual culture afforded by them were deemed, as they are in fact, beneficial to the public, necessary to the advancement of civiliza-tion and to the promotion of the welfare of society.

Although the statute does not in terms prescribe the purposes for which the lot on which the buildings are situated may be used, nor its dimensions, yet a reason-able interpretation thereof requires that the lot be devoted to no use other than that which is necessary or fairly incident to the use and purposes of the institution, and that its dimensions be governed by the reasonable and proper uses to which it is applied, rather than by its magnitude when it is within reasonable limits in that respect.

That as suitable recreations and physical exercise are deemed requisite to health and successful mental culture, the means and opportunity required for that purpose may properly be provided upon the premises of a literary institution for its students.

The relator, which was incorporated "to establish and maintain a seminary of learning in the county of Niagara for the care and education of young men," acquired title, as authorized by the acts incorporating it, to a tract of land on the east side of and adjacent to the Niagara river, in the town of Lewiston, extending back from the river about one mile, and being in width about one-half mile, containing, exclusive of a highway and of the lands of a rail-road company which runs northerly and southerly through the premises, about 294 8-100 acres. The buildings are near the west end of the farm and consist of a college building, a chapel and other buildings occupied as a tailor shop for repairing the clothes of the professors and pupils, a shop for repair-ing their shoes, a music and band-room and some sleeping-rooms, a laundry, a wood-house and bake shop, a carpenter's shop, a machine shop, a gas-house, a boiler-room and some dwellings. The buildings are occupied and used and the business is carried on for the benefit and purposes of the institution and the

teachers and students of the college. There is also a cemetery and an apple orchard on the premises.

The land farther east is used for raising vegetables, grain, hay and for pasturage; horses being kept for the purpose of working the land and upwards of thirty cows to supply milk and butter. The teachers and students are furnished by the corporation with board, and their washing and mending is done for them, the students being charged therefor. All the products of the farm are used upon the premises to supply those engaged there as teachers, students and servants.

*Held*, that as the farm on which the college building is situated was used for the maintenance of the college and in support of its efficiency in aid of education, and seemed to be wholly devoted to the purpose of the institution, and as its extent did not seem to be unreasonably great, the whole tract of land was entitled to be exempted from taxation under the provisions of subdivision 3 of section 4 of 1 Revised Statutes, 388, as amended by chapter 397 of 1883.

*It seems*, that in entering land upon the assessment-rolls for an omitted tax of the preceding year the assessors can exercise no discretion. Their powers and duties being, in this respect, merely ministerial, they can do no more than to enter the same valuation as that of the year before. (BRADLEY, J.)

APPEAL from an order of the Erie Special Term modifying an assessment.

This is a proceeding by *certiorari* to review the assessment of 1885, made of the relator's property. The relator was incorporated " to establish and maintain a seminary of learning in the county of Niagara, for the care and education of young men," by Laws of 1863 (chap. 190). And it was by the act provided that whenever, in the opinion of the regents of the university, the state of literature of the seminary and the value of its property should justify it, they might, on the petition of the trustees, erect it into a college. (Id., § 6, amended by Laws 1883, chap. 92.) And it was authorized to take title to certain property. (Laws of 1877, chap. 273.) The institution was erected into a college by the regents of the university, by an instrument to that effect of date of August 7, 1883, recorded in their book of incorporations September 27, 1883.

The relator's land is on the east side of and adjacent to the Niagara river, in the town of Lewiston, and contains, exclusive of the highway and the Rome, Watertown and Ogdensburg Railroad, running through it, $294\frac{8}{100}$ acres. This railroad runs northerly and southerly through the premises, and is east of the college building and chapel. In 1884 the east part, and all except forty-five acres of

the land, was assessed as 250 acres at fifty dollars per acre, $12,500, and the tax levied was $137.76. This assessment was in proceeding by *certiorari* stricken from the roll for informality in its entry upon it. In 1885 assessment was made of the premises, excepting designated portions, making fourteen forty-seven one-hundredths acres. And that assessed was inserted at 271 acres at fifty dollars per acre, $13,550, and tax levied $194.34. And the omitted tax of 1884 was made as upon 271 acres, at a valuation of $13,550, and tax levied, $149.33.

This proceeding was taken to review the assessment of 1885 and the entry as for the omitted tax of 1884. The Special Term struck out the entry of the assessment as for omitted tax, and modified the other by extending the exemption so as to cover twelve sixty-nine one-hundredths acres more of the premises and reduced the assessment accordingly. Both parties appeal.

*C. H. & T. H. Piper,* for the relator.

*Joel L. Walker,* for the defendants.

Bʀᴀᴅʟᴇʏ, J. :

The statute under which the exemption is claimed by the relators provides that "every building erected for the use of a college, incorporated academy, or other seminary of learning, and in actual use for either of such purposes; every building for public worship, every school-house, court-house and jail, used for either of such purposes, and the several lots whereon such buildings so used are situated, and the furniture belonging to each," shall be exempt from taxation. (1 R. S., 388, § 4, sub. 3, as amended by Laws of 1883, chap. 397.) The buildings of the relator, so far as requisite for the purpose, come within the provisions of this statute. They have been for many years and were, at the time of the assessments, used as and for a seminary of learning. The question here is whether the exemption extends to all the land there owned by and in the occupation and use of the relator, or whether less than the whole, and if so, how much, and what portion of it, properly comes within such protection.

The land constituting this farm was known as lots 27 and 28 of the "Mile Reserve," and extends back from the river about one

mile, and is in width about one-half mile. The buildings are near the west end of the farm, and consist of a college building, a chapel and other buildings occupied as tailor shop, for repairing the clothes of the professors and pupils, a shop for repairing their shoes, a music and band-room, and some sleeping-rooms; a laundry, a wood-house and bake-shop, a carpenter shop, a machine shop, a printing office, a gas-house, a boiler-room, and some dwellings. The buildings are occupied, used, and the business carried on for the benefit and purposes of the institution and the teachers and students of the college. There is also a cemetery and an apple orchard on the premises.

The land further east is used for raising vegetables, grain, hay, and for pasturage. Horses are kept for the purpose of working the land, and upwards of thirty cows to supply milk and butter. The teachers and students are furnished by the corporation with board, and washing and mending are done for them there, and the students are charged for it. All the products of the farm are used upon the premises, to supply those engaged there as teachers, students and servants, and are said to be insufficient for such purposes. The number of students was 190, from September, 1884, to June, 1885. Since then the average has been 150. The college has capacity for 225. From the printing office is issued, to subscribers, a paper edited by students, and some job work is done there. The premises, as a whole, are operated for the benefit of the institution, and the system by which they are conducted seems to be one for its maintenance. Its purpose, evidently, is self-support.

The policy of the law has been, in this State from an early day, to encourage, foster and protect corporate institutions of religious and literary character, because the religious, moral and intellectual culture afforded by them were deemed, as they are in fact, beneficial to the public, necessary to the advancement of civilization, and the promotion of the welfare of society. And, therefore, those institutions have been relieved from the burden of taxation by statutory exemption.

This statute is entitled to such a construction as will permit it to serve the purposes in view. There is, by its terms, no qualification of the purposes for which the lot on which the buildings are situated may be used, nor is the dimension of the lot prescribed;

but a reasonably necessary interpretation requires that the lot be devoted to no use other than that which is necessary or fairly incident to the use and purposes of the institution.  The contemplated dimensions of the lot must, in like manner, be governed by the reasonable and proper uses to which it is applied rather than to its magnitude when within reasonable limits in that respect.  Suitable recreation and physical exercise are deemed requisite to health and successful mental culture.  The means and opportunity for that purpose may, therefore, properly be provided upon the premises of a literary institution for its students.  This was the view of the Special Term, and its order embraced within the exemption all those portions of the land in question devoted to such purposes.  The inquiry now arises whether that portion of the lot or farm which supplies the substantial maintenance of the relator, that which furnishes its vegetables, the grain for its bread, the milk, butter and pork for its table, come within the like protection.  The farm upon which the college building is situated is used for the maintenance of the college, goes in support of its efficiency in aid of education and seems to be wholly devoted to the purposes of the institution and in its behalf.  And, so far as adequacy may furnish a guide in that direction, it does not here appear that the extent of the premises is unreasonable for those purposes.  The question presented does not seem to have often arisen under the statute.. The question has in this State usually been one of concession rather than litigation.

In *People ex rel. Academy of the Sacred Heart, etc.,* v. *Commissioner of Taxes* (6 Hun, 109), the relator was an academy, its buildings were upon premises owned by it, containing about fifty acres.  The buildings covered five acres, a garden occupied eight acres of it, where vegetables were produced for the use of the teachers and pupils, and thirty-six acres were used for walks and recreation of the students.  The court there held that the entire land was within the meaning of the statute exempt from assessment from taxes.  And this was affirmed by the Court of Appeals.  (64 N. Y., 656.)

In *People ex rel. St. John's College* v. *Commissioner of Taxes* (10 Hun, 246), the lots on which the college buildings were situated comprised 103 acres, the portions not occupied by the buildings were used as a vegetable garden and for farming purposes for the

pupils, teachers and officers of the college, as a cemetery, and for the recreation and walks of the pupils. It was held that the land was exempt from taxation. The rule of construction of the statute adopted in those cases appears to be applicable to the case at bar. The difference in quantity of the lands there and in this case does not seem important, inasmuch as all portions of the lot or farm in question are in use for the purposes of the college, its pupils, teachers and servants, and its products are wholly devoted to, and exhausted by, such use. The question is wholly one of statutory construction and not of discretion of the assessors, when the facts are not in dispute. When they made the assessment the assessors may not have had the means of information satisfactory to them of the operation of the land and the uses made of its products.

The premises appeared to have the management common to farming lands, and were operated for like general purposes, and in like manner divided by fences into fields for grain, meadow and pasture. The facts are not questioned by the evidence that the agricultural and horticultural business of the farm are conducted by the relator through its servants, for the single purpose of furnishing supplies for its maintenance, upon the system adopted by it to carry on its work of education. And whether or not this may be deemed the better manner to aid the result, in view of or within the legitimate purposes of the institution, is not the subject of inquiry here, but is matter of its discretion, unless it may be seen that it is an improper exercise of corporate power in aid of or to accomplish the purposes of its organization. It is not so treated. (*People ex rel. St. John's College* v. *Comr. of Taxes, supra; Wesleyan Academy* v. *Wilbraham*, 99 Mass., 599.)

The question presented by this case is one of some importance, in view of the quantity of land embraced in the lot, and of the fact that the products are used to some extent to supply the students with board for a consideration by them paid.

In the view taken here, this is not done as a means of profit, as distinguished from that of maintenance of the institution, but as the latter, and for its support in the accomplishment of its educational purposes. This construction of the statute seems to lead to the conclusion that the limit is measured only by adequacy, when the situation in other respects comes within the statute, and that

any other rule must be dependent upon legislation. And although this construction is not made entirely clear by the terms of the statute, the adjudications referred to seem to furnish authority for its support.

The fact that the lot is intersected by a highway, and a railroad constructed through it, does not, we think, affect its character as a lot, in its relation to the institution as such, within the meaning of the statute. The question was, to some extent, in the St. John's College case. While most of the buildings are west of the railroad there are some east of it, " erected for the use of seminary," within the meaning of the statute.

The amendment of 1883, given to the statute, is not a modification bearing upon any question in this case. The purpose and effect of the amendment were to designate, as the buildings within the statute, those only which are in use for the specified purposes.

These views render the consideration of the question relating to the omitted tax of 1884 unnecessary.

We think that question was properly disposed of at the Special Term. In entering the land upon the roll of 1885, as for an omitted tax of the preceding year, the assessors could exercise no discretion. Their powers and duties in that respect were ministerial. They could properly do no more than to enter the same valuation as that of the year before, and the board of supervisors were required to levy a tax at the same rate per cent as that of such year. (Laws of 1865, chap. 453; *People ex rel. Oswald* v. *Goff*, 52 N. Y., 434.) We think the assessors were not permitted by this statute, with a view to an omitted tax, to insert on the roll a greater valuation than that of the preceding year, although they made entry as original assessment of an increased quantity of land, but that they should have been governed by the judicial action of the assessors of such preceding year.

If the view taken of this case is correct, the conclusion follows that the judgment should be reversed, so far as it sustains the assessment of any portion of the relator's land, and so modified as to direct that the assessment of 1885 be stricken from the roll, and in other respects, and as so modified affirmed.

SMITH, P. J., and BARKER, J., concurred; HAIGHT, J., not sitting.

Judgment, so far as it sustains the assessment of any portion of the relator's land, reversed, and so modified as to strike the assessment of 1885 from the roll, and as so modified affirmed, without costs to either party.