TRUSTEES OF THE WESLEYAN ACADEMY *vs.* INHABITANTS OF
WILBRAHAM.

A farm, and the farming stock, owned by an institution incorporated within this Common-
wealth for the education of youth, and by it worked solely to raise produce and do team
work for a boarding-house kept by the institution to supply board to the students at its
actual cost, is exempted from taxation, by the Gen. Sts. *c.* 11, § 5, *cl.* 3; and it is imma-
terial that one eighth part of the farm, which consists of waste and swampy land and
connects other parts which are cultivated and with which it was bought, is suffered to lie
unused.

CONTRACT to recover the amount of a tax assessed by the
assessors of the defendant town, in 1866, in part on two horses,
four oxen and six cows, and in part on two barns and about a
hundred and fifty acres of land, of the property of the plaintiffs,
and by them paid under protest. Trial in the superior court,
before *Devens*, J., who reserved the case for the determination
of this court on the following report :

" It appeared in evidence that the plaintiffs were incorporated
and authorized to hold property, by the Sts. of 1823, *c.* 80, and
1866, *c.* 106 ; and that they held property in 1866 amounting in
all to about $150,000, and were at that time an educational
institution situated in the town of Wilbraham, owning and oc-
cupying several buildings used exclusively for recitation-rooms,
halls and lecture-rooms, together with a large boarding-house
and dormitory, sufficient in size to furnish lodging-rooms for
more than two hundred and fifty students, and tables for two
hundred and eighty.  The average attendance of students upon
the school for the year 1866 was about three hundred and thirty,
of boys and girls.  The institution is located about two miles
from Collins's depot, and ten miles from Springfield, in a
sparsely inhabited town in which there are no public markets or
stores for the sale of provisions in quantities.

" It was also in evidence that there were not accommodations
for boarding the students in the town outside of the boarding-
house ; that, with their present facilities for boarding, together
with such as could be procured elsewhere in the town, they were
freqently obliged to turn away students, for want of board and

rooms; and that, while they were without a boarding-house some years ago on account of its destruction by fire, their school was reduced to less than half its present number for want of board and rooms, and the plaintiffs proceeded to raise funds and make preparations to rebuild their boarding-house immediately after it was burned.

" It appeared that the institution was in 1866 the owner of about one hundred and ninety acres of land in all; from thirty to forty acres of which were used for a play-ground and a grove for the students, and the rest constituted a farm, consisting of mowing, pasturage and tillage. This farm was the land on which was assessed the tax in question. In 1866 it was culti-vated by the institution for the purpose of keeping cows to fur-nish the boarding-house in part with milk, and of raising vege-tables and other provisions to be used there for the support of the students. The cows, oxen and horses, on which the personal property tax was assessed, were kept on this farm; the cows for the purpose aforesaid, and the oxen and horses to do the work of the farm and draw provisions and other things for the use of the boarding-house.

" The evidence showed that, in addition to summer fruits and vegetables used from day to day in the boarding-house, and hay and grain fed to cattle and horses in their barns, there were raised upon said farm, in the year 1866, seventeen bushels of beans, fifty-two bushels of beets, sixty-four bushels of turnips, forty-one bushels of onions, five hundred and eighteen bushels of potatoes, two thousand one hundred and four pounds of pork, and nine thousand eight hundred and eighty-six quarts of milk; all of which were consumed by the students, teachers and do-mestics in the boarding-house, the testimony being that the only sale, for some years, from the products of the farm, was of one ton of very poor hay, which was sold solely because it was too poor to be advantageously used by them. It was also proved that these products constituted but a small proportion of what they were obliged to use of the same kinds, and were mainly held in reserve for times when the plaintiffs were unable to get such provisions without great inconvenience from other sources.

" It further appeared that their lands outside of the pleasure grounds of the institution were kept and used for no other purpose than to supply their boarding - house as aforesaid, and cheapen the cost of education by reducing the cost of board, and allow students to some extent to reduce the expenses of their education by working upon the land in vacations, and nights and mornings and Saturdays of term-time, and receiving pay therefor. It was also in evidence that the students were charged in their term-bills for board by the week, separately from room rent and tuition. There was evidence tending to show that, by this arrangement for maintaining a boarding-house, the plaintiffs were able to furnish board to their students at a much cheaper rate than could otherwise be done, and that they made no profits for themselves or said institution from their farm or boarding-house, but furnished board to their students at cost price, giving them the benefit of the best arrangements they could make for supplying the table cheaply. It was proved that the farmers of Wilbraham raised upon their farms sufficient produce for the supply of said boarding-house, but that it could not be obtained regularly, as needed, except by a system of contracts with individual farmers, and then at prices somewhat higher than it would cost to the producers.

" It was further in evidence that there were from fifteen to twenty acres of waste land, which were swampy and brushy, upon the farm; but that this portion was on one side of the farm and connected the arable land, was bought with other portions of the farm which were valuable for cultivation, and was not used or kept for any purpose in itself, but simply as a part of the farm which they used as above described; and that the plaintiffs had offered to sell it if they could find a purchaser.

" Upon the foregoing facts, the court directed the jury to return a verdict for the plaintiffs for the sum of twelve dollars, the amount paid as a tax upon the personal property in question, and instructed them that the plaintiffs could not recover for the amount paid as tax upon their real estate; and accordingly a verdict was so entered, and the case reported for the supreme judicial court to enter such judgment as the facts call for."

*M. P. Knowlton,* ( *G. M. Stearns* with him,) for the plain-tiffs.

*H. Morris & C. A. Winchester,* for the defendants. The acad-emy was established " for the purpose of promoting religion and morality, and for the education of youth in such of the liberal arts and sciences as the trustees shall direct." St. 1823, *c.* 80. The personal property used by them for the legitimate objects of their incorporation, and real estate occupied by the academy or its officers as such, are alone exempt from taxation. Gen. Sts. *c.* 11, § 5, *cl.* 3. *Pierce* v. *Cambridge,* 2 Cush. 611.

A boarding-house is not a necessary or usual appendage to an academy; and a farm is not a necessary nor even a usual appendage to a boarding-house. This boarding-house was carried on as a separate branch of business; its expenses and receipts were kept separate from the directly educational ex-penses of the academy; and the farm and farming stock, if an appendage to anything, were so to the boarding-house only, not to the academy. They were not necessary to enable the acad-emy to accomplish the legitimate objects of its creation, but only conveniences to " cheapen the cost of education by re-ducing the cost of board." The same argument which would exempt them from taxation would exempt also stages, steam-boats and railroads, used to cheapen travel to and from the academy. But the statute must receive a reasonable construc-tion.

The keeping of a boarding-house and carrying on of a farm by the plaintiffs was not authorized by their act of incorpora-tion, and was a misuse of their property; and so not exempt. If they might keep a boarding-house, why not a publishing-house and a clothing shop, and indeed carry on all kinds of business which would serve to cheapen the means of getting an education? They were not chartered for any such purpose.

If any part of the personal property or real estate was tax-able, the remedy for the excess is by application for an abate-ment; and so the action cannot be maintained. *Howe* v. *Bos-ton,* 7 Cush. 273. *Middlesex Railroad Co.* v. *Charlestown,* 8 Allen, 333. Gen. Sts. *c.* 11, §§ 43-47.

Trustees of the Wesleyan Academy *v.* Inhabitants of Wilbraham.

CHAPMAN, C. J. This action is founded upon the Gen. Sts. *c.* 11, § 5, which exempts certain property from taxation. The third clause exempts " the personal property of literary, benevolent, charitable and scientific institutions incorporated within this Commonwealth, and the real estate belonging to such institutions, occupied by them or their officers for the purposes for which they were incorporated." The academy of the plaintiffs is a literary and scientific institution duly incorporated, and the only questions that are raised in the case relate to the character of the property which the defendants have assessed.

In *Pierce* v. *Cambridge*, 2 Cush. 611, a construction was put upon a similar provision of the statute then existing. It was held that, although the plaintiff was a professor in Harvard College, yet a house belonging to the corporation was not exempt from taxation, while he held it under a lease from them, paying rent therefor. If he had occupied it without taking a lease or paying rent, the court say it would have been otherwise. It was held to be taxable, because the present estate was in the lessee and the corporation had only a reversionary interest.

In this case, the plaintiffs have not leased their land, but are themselves in possession of it. It consists of one hundred and fifty acres of land and two barns. They own and occupy about one hundred and ninety acres of land in all, and their school buildings and a large boarding-house are situated on it. These buildings, and about forty acres of land around them, which is used as a play ground and grove for students, are not taxed. The rest of the land, which is taxed, constitutes a farm, consisting of mowing, pasture and tillage grounds, and about twenty acres of waste land, which is swampy and brushy and was purchased as part of the farm. The farm is cultivated by the plaintiffs for the purpose of keeping cows to furnish the boarding-house in part with milk, and of raising vegetables and other provisions to be used there for the support of the students. The cows, oxen and horses, on which the personal tax was assessed, were kept on this farm ; the cows for the purpose aforesaid, and the oxen and horses to do the work of the farm and to draw provisions and other things for the use of the boarding-house.

It does not appear that any profit is made by the plaintiffs out of what is thus furnished to the boarders; but an account is kept, and the cost of the production is reckoned, and enters into the price of board. The object of the plaintiffs is, to furnish the students with cheap board; and this is one method of cheapening it, the whole benefit of the arrangement being allowed to them. So far as these students are concerned, it is a boarding-school, and in respect to board, as well as school-rooms, apparatus and tuition, the ultimate purpose is, to furnish cheap education.

If the boarding-house and farm had been rented to a boarding-house keeper, the case would have been like that above cited. It would be the same, if the plaintiffs carried on their farm and sold the produce at its market price for the use of the students, in order to make a profit as farmers or as dealers in milk and vegetables. But, as it is managed, the object not being to make a profit to the funds of the institution, but to benefit the students, it is as really used for the purpose for which the institution was incorporated as the buildings and school apparatus. The personal property is exempted by the statute. As to the waste land, it would be difficult to purchase a large farm which did not contain more or less of such land, and in this case the land does not appear to have been purchased for any distinct purpose, nor to be appropriated to any use whatever. The court are of opinion that the property is so occupied as to be within the exempting clause.

*Judgment for the plaintiffs for the whole amount of the tax.*