## MASSACHUSETTS GENERAL HOSPITAL *vs.* INHABITANTS OF SOMERVILLE.

The exemption from taxation, conferred by the Gen. Sts. *c.* 11, § 5, *cl.* 3, on the real estate belonging to literary, benevolent, charitable and scientific corporations, "occupied by them or their officers for the purposes for which they were incorporated," is not limited to such real estate only as may appear to the court necessary for those purposes, but applies to all real estate of the corporation occupied by it or its officers, and intended for and in fact appropriated to those purposes by its officers, in the absence of anything to show abuse or otherwise impeach their discretion.

If land adjoining other land occupied for the purposes of a hospital for the insane by an institution incorporated within this Commonwealth to erect, support and maintain such a hospital, was bought and is held by the corporation "to prevent too near proximity of buildings and use which might be deleterious to the hospital," such holding is a sufficient occupation of the land, within the meaning of the Gen. Sts. *c.* 11, § 5, *cl.* 3, for the purposes for which the institution was incorporated, to exempt it from taxation; and the mere fact that the extent of the land so held is one hundred and ten acres, including forty-six of marsh and twenty-seven of flats, will not warrant a judicial determination that the officers of the corporation exercise their discretion wrongfully in so holding it.

An old wooden building, situated on untaxed land owned by a hospital corporation, was inhabited by a workman, with his family, who was exclusively employed by the corporation, and from whose wages the superintendent of the hospital deducted a certain sum monthly, and gave him a receipt therefor as rent, he crediting the corporation with the sum so deducted. On a trial of the issue whether a tax was lawfully assessed to the corporation on this building, *Held,* that, if the occupation by the workman was merely by reason of his service, the building was not taxable; and that the payment and receipt of rent was not conclusive that the relation between the corporation and the workman, in the building, was other than merely that of master and servant.

In an action to recover the amount of a tax assessed to a benevolent corporation and paid under protest, in defence of which it was contended that a building liable to taxation by reason of the receipt of rent for it by the plaintiffs, and situated on land not taxed, was included in the assessment, it appeared by the assessors' books "that, in the column of property assessed by them, under a heading of 'Buildings,' there was a figure 1, and immediately following was, 'Barrell farm, about eighty acres,' and '$40,000' as the assessment against the plaintiffs," who three days before the date of the assessment had bought the Barrell farm for that sum. And one of the assessors was permitted to testify that he assessed the tax and wrote the description; that the building referred to by figure 1 was the building on the other land of the plaintiffs not taxed; and that he did not know

whether the plaintiffs received rent for it in the year when taxed. *Held*, that, even if the testimony of the assessor was competent, the evidence did not warrant the court in assuming that the building was included in the assessment.

CONTRACT, by a benevolent institution incorporated within this Commonwealth by the St. of 1810, *c.* 94, to recover a tax of $620 assessed May 1, 1867, by the assessors of the defendants on real estate of the plaintiffs in Somerville, and paid under protest. Trial in the superior court, before *Lord*, J., who reported the case substantially as follows, for the revision of this court.

The parcel of taxed real estate adjoined other real estate of the plaintiffs occupied for the purposes of a hospital for the insane; was traversed by four railroads; and consisted of thirty-seven acres of upland, forty-six of marsh, and twenty-seven of flats, on no part of which, at the time of the assessment of the tax, was there any building, but on which since that time a lodge had been built at an entrance on the upland. This parcel was held by the plaintiffs as lessees from January 1849 till April 1867, when they bought it, entire, for $40,000.

"It appeared in evidence that the upland was used for farming purposes, and to some extent as a ground for the walking and recreation of those patients for whom it might be proper to work or go beyond the high fences or walls around the buildings; that the marsh was mowed, and the hay and other products of the land were consumed or used by the hospital; that the flats were claimed, as appurtenant to the upland, and to be occupied for purpose of light and air, to the water; that the whole premises were bought and held to prevent too near proximity of buildings and use which might be deleterious to the hospital for the proper treatment of the insane, although no other use or occupation had been made of the same than above stated; and that no fences had been erected on the land taxed, except on that part abutting on the highway.

"Upon the foregoing evidence, offered by the plaintiffs, the judge ruled that the action could not be maintained, and directed the jury to find for the defendants."

*C. W. Loring*, for the plaintiffs.

*H. W. Paine,* for the defendants. If any part of the real estate taxed was liable to taxation, the plaintiffs cannot maintain their action. Gen. Sts. *c.* 11, § 43. *Howe* v. *Boston,* 7 Cush. 273. The flats do not appear to have been occupied for any purpose, are not an essential part of the parcel, may be sold and severed from the upland without impairing its value as a farm, and have perhaps a greater value per superficial foot than the upland. If the disproportion in their area to the area of the upland was greater, as for instance if there were five acres of upland and fifty of flats, would the fifty acres be exempt because the five were tilled for the use of the hospital? It is immaterial whether the flats and upland were bought together or separately.

But the whole parcel was liable to be taxed. Gen. Sts. *c.* 11, §§ 2, 3. To relieve it from the burden of taxation, it must be shown to have been necessarily occupied by the institution or its officers for the purpose for which the institution was incorporated; Gen. Sts. *c.* 11, § 5; which purpose was, to erect, support and maintain " a general hospital for sick and insane persons," (St. 1810, *c.* 94,) and does not properly include the maintenance of a farm any more than a variety-shop or a saw-mill. The court has manifested no inclination to enlarge the exemption. *Pierce* v. *Cambridge,* 2 Cush. 611. *Lowell* v. *Lowell,* 1 Met. 538.

WELLS, J. The plaintiff is a benevolent institution, incorporated within this Commonwealth. By Gen. Sts. *c.* 11, § 5, *cl.* 3, " the real estate belonging to such institutions, occupied by them or their officers for the purposes for which they were incorporated," is exempted from taxation.

The statute contains no limitation of the amount of real estate that may be thus held exempt from taxation ; and we know of no authority under which, or rule by which, the court can affix ny such limitation. The only condition upon which the exemption depends is the proviso as to the purposes for which the real estate is occupied.

In construing and applying this proviso, the court cannot restrict it to the limit of necessity. The statute does not indicate

such an intention on the part of the legislature; and we do not think that any considerations of public policy require us to confine the exemption to narrower limits than the terms of the statute fairly imply. What lands are reasonably required, and what uses of land will promote the purposes for which the institution was incorporated, must be determined by its own officers. The statute leaves it to be so determined, by omitting to provide any other mode. In the absence of anything to show abuse, or otherwise to impeach their determination, it is sufficient that the lands are intended for and in fact appropriated to those purposes.

In this case, it is manifest that the intention with which the lands in question were purchased and held was to promote the purposes for which the institution was incorporated. The case suggests several uses to which different portions of the land were appropriated, and which tend to justify their occupation for the proper purposes of the institution. One, which applies to the whole extent of land held, is, that " it was bought and held to prevent too near proximity of buildings and use which might be deleterious to the hospital for the treatment of the insane." There is nothing in the case to show that this was not the real intention; nor that the whole of the lands were not in fact held, and proper to be held, for this purpose. The court cannot, from the mere fact of the extent of the lands so held, (one hundred and ten acres, including marsh and flats,) determine judicially that the trustees of the institution have wrongly exercised their discretion in this respect. The presumption is in favor of their judgment, and it requires something more than mere difference of opinion, upon a matter of opinion especially confided to them, to overcome that presumption. The decision in *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599, is directly applicable, and conclusive upon this point.

It is contended that there is no such occupation of the flats as the statute contemplates. But if the purpose stated be one which is sufficient to warrant the holding of land exempt from taxation, then, the occupation being all that is necessary for that purpose, the condition of exemption is satisfied in both respects. We can have no doubt upon this point.

The ruling of the court below, directing a verdict for the defendants, was erroneous. *Verdict set aside.*

At the new trial, before *Dewey*, J., a verdict was again returned for the defendants, by direction of the judge, who allowed the following bill of exceptions, which was argued at the November session 1869.

" The plaintiff corporation is managed by a board of trustees, and previously to April 27, 1867, owned a large extent of real estate (from forty to sixty acres of land) in Somerville, upon which they had erected a large number of buildings, of great value. The buildings, with all the land, had been occupied for their hospital for the insane, and had not been taxed by the defendants. It appeared that on the books of the corporation the buildings and land were valued at about $400,000, which was less than the actual cost.

" The plaintiffs had from time to time purchased adjoining land, and occupied the same for the purposes of the hospital. Upon a portion of the territory bought and occupied, as before stated, by them, there was an old wooden building which had been on the plaintiffs' land for a long time, and been in the place where it now stands since 1859 or 1860, and was, in May 1867, and for some years had been, occupied by a person with his family, who was and is exclusively employed in repairing and taking care of the buildings on the hospital grounds. He was paid by the superintendent, once a fortnight, a certain sum per day. At the end of every month, the superintendent deducted nine dollars from his wages, as rent, and gave him a receipt for the rent of that month. He credited the institution with rents so received. There was testimony to show that the rent was very low. And there was testimony that the superintendent settled his accounts with the treasurer; but there was no evidence that the trustees knew of this rent being so charged and received.

" On April 27, 1867, the plaintiffs bought, for $40,000, a neighboring estate of about one hundred and ten acres, known as the Barrell farm, consisting of upland, flats and marsh, a por-

tion of which was in Charlestown. The plaintiffs had, for many years before their purchase, hired the whole of the said estate. On May 1, the assessors of Somerville assessed the plaintiffs for the sum of $40,000. It appeared by the books of the assessors of Somerville, that, in the column of property assessed by them, under a heading of 'Buildings,' there was a figure 1, and immediately following was, 'Barrell farm, about eighty acres,' and '$40,000' as the assessment against the plaintiffs. One of the assessors testified that the building referred to by figure 1 was the one occupied by the plumber on the other land of the plaintiffs not taxed; that he had assessed the tax and wrote the description; that he did not know whether the plaintiffs received rent for the same in 1867, when assessed. There was no evidence to prove that the plaintiffs had any knowledge that the tax was assessed on the building until the production of the assessors' books at the close of the hearing at this trial.

" Other evidence was offered as to whether the land purchased, called the Barrell farm, was occupied by the plaintiffs for the purposes for which they were incorporated; but the judge ruled that the action could not be maintained, if the dwelling-house, belonging to the plaintiffs and included in the assessment, was occupied by a tenant who paid rent therefor, as hereinbefore stated, and directed the jury to find for the defendants; to which rulings and directions the plaintiffs excepted."

*B. R. Curtis & C. W. Loring,* for the plaintiffs. The judge erred in ruling substantially that the workman had an estate in the building, when it was possible that he gained no estate, but occupied only as a servant of the corporation. His occupation was in fact by reason of his service. The monthly deduction from his wages did not change its character. Colleges take pay for the occupation of their dormitories by students, and hospitals for the occupation of their wards and rooms by patients, without vesting estates in student or patient. The corporation might supply a place of residence as part of the compensation of an employee. At the most, the workman was but a tenant at sufferance; for there was no evidence that the letting by the superintendent was authorized or sanctioned by the trustees

and in the absence of any evidence to the contrary it is not to be assumed that he had a right to create an estate in the workman, though he might have authority to establish the relation of master and servant, and an occupation in conformity with and by reason of that relation.

The judge erred also, in assuming, on the evidence, that the building occupied by the workman was included in the assessment. It was the Barrell farm with this building on it which was valued on the assessors' books; but this building was not on the Barrell farm. The description was insufficient. Gen. Sts. c. 11, §§ 33, 34. St. 1861, c. 167, §§ 1, 2. Assessors are required to make a list and description of property which they assess, definite enough to inform the taxpayer what he is taxed for, and what it is valued at. See *Torrey* v. *Millbury*, 21 Pick. 64.

*H. W. Paine*, (*C. S. Lincoln* with him,) for the. defendants. The dwelling-house was not occupied by the plaintiffs or their officers, at all, and certainly not for the purposes for which they were incorporated, and is not exempt under the Gen. Sts. c. 11, § 5. It was rented to a person not an officer of the institution. It is immaterial whether he credited the rent, or was charged therefor, or paid it in money; it does not change the relation of the parties as landlord and tenant. *Pierce* v. *Cambridge*, 2 Cush. 611. And if any part of the estate was liable to be taxed, though the remaining part was not, this action cannot be maintained. Gen. Sts. c. 11, § 43. *Bourne* v. *Boston*, 2 Gray, 496. *Howe* v. *Boston*, 7 Cush. 273. *Lincoln* v. *Worcester*, 8 Cush. 55. *Salmond* v. *Hanover*, 13 Allen, 119.

Although the fact that rent was paid or allowed for the house may not have been brought home to the trustees, it is not in evidence that the tenant was in wrongful possession; and, not being an officer of the institution, the tenant, in the absence of any agreement, is liable to pay rent. And if the plaintiffs had no knowledge that the tax was assessed on the building, it was not the fault of the defendants. The assessors' books are always open for inspection.

WELLS, J. The defence now relied on is, that, in the assessment by which this tax was laid, there was included " an old

wooden building" occupied as a dwelling, for which rent was charged and received by the plaintiff, and which it is claimed was taxable under the decision in *Pierce* v. *Cambridge*, 2 Cush. 611. If this building was taxable, and in fact taxed to the plaintiff, no recovery can be had in this action. The error, being one of overvaluation only, is to be corrected by an application for an abatement. *Salmond* v. *Hanover*, 13 Allen, 119.

The tax, in the case of *Pierce* v. *Cambridge*, was levied upon the tenant of premises held under a lease which gave him an estate in the land. The ground of the decision was, that the tenant "had an estate in possession in the house and land, and the college had only the reversion." The court further say, in regard to the exemption under Rev. Sts. *c.* 7, § 5, that it "ceased after the house and land had been separated from the college yard, and leased to the plaintiff."

The building, in the present case, was upon land not taxed and apparently exempt from taxation, by reason of the manner in which it was held, in connection with the charitable objects for which the plaintiff was incorporated. The facts in regard to the occupation of the building are imperfectly stated in the exceptions. As the judge ruled that the property was taxable, the facts should be taken to be as claimed by the plaintiff's counsel, at least so far as the jury would have been authorized to find such facts by the evidence before them. If, as it is claimed in behalf of the plaintiff, the occupation was one merely by reason of service, the building being held as incident only to the general purpose for which the land was held, and occupied by the person charged with the care of the buildings on the hospital grounds, for reasons of convenience ; and the rent was paid and received, in the manner stated, as a convenient mode of adjusting the compensation of the person so employed, and not as the income or fruit of an estate granted; we are of opinion that the exemption would still attach to the property. By the ruling of the court below, as we understand it, the question was made to turn upon the single fact of the payment and receipt of rent. This we think was erroneous.

Upon another ground we think the ruling ought not to be sustained. The court below assumed that the building was included in the assessment upon which the tax was laid. The evidence, as it appears to us, does not warrant that assumption by the court.

There was one assessment of $40,000. The principal subject of that valuation was the Barrell farm, of about eighty acres. At the trial, it appeared that, upon the assessors' books, immediately preceding the description of the farm, and under a heading of " Buildings," there was a figure 1. There was no further description, nor any separate valuation of the building. One of the assessors testified " that the building referred to by figure 1 was the one occupied by the plumber on the other land of the plaintiffs not taxed ; that he had assessed the tax and wrote the description ; that he did not know whether the plaintiffs received rent for the same in 1867, when assessed." It is to be observed that the assessor does not state what valuation was placed upon the building, nor that any valuation was in fact put upon it and included in the $40,000. There was no ground to justify a tax upon the building, which would not require the tax to be laid also upon the land on which it stood. And it would appear, from the testimony of the assessor, that the ground upon which it is now sought to maintain the tax was not then known to himself. Whatever may have been the purpose of entering the figure 1 upon the assessors' books, we think the testimony does not show that there was any valuation of that building, nor that any part of the tax was then intended to be applied to that property.

But further than that, we are inclined to think that it would not be competent for the defendants thus to establish a tax which does not appear upon the books of the assessors. There is a full and distinct description of the Barrell farm, and a sum set against it as for the valuation put upon it. If the figure 1 may properly be taken as a part of the description of the subject matter upon which that valuation is placed, it indicates a building upon the land there described and valued. Buildings are taxable with the land to which they are affixed, constituting

together one subject of taxation, real estate. Gen. Sts. *c.* 11, § 3. The St. of 1861, *c.* 167, authorizes the separate valuation of buildings, exclusive of land, only for the purpose of securing a more specific description and valuation of each class and parcel of property of which the whole real estate consists. It requires that the value of any building which is a subject of taxation shall be separately fixed by the assessors, and entered in an appropriate column upon their books, "opposite the description of the same." If the assessors, in making the assessment, have utterly disregarded that statute, its aid cannot be invoked to give significance and effect to an entry upon their books which would otherwise have none. If the testimony of the assessor be taken to mean that a valuation was in fact made of the building in question, and included in the gross sum for which the plaintiff corporation was assessed and taxed, then it not only shows a disregard of the statute, but is inconsistent with the record upon the assessors' book. Oral testimony may undoubtedly be admitted to aid an imperfect description, and to show to what particular property an ambiguous designation was intended to apply. But here the figure 1, connected as it is with the description and valuation of the Barrell farm, cannot be regarded as in any sense a description or designation of a parcel of real estate entirely distinct and separate from the land there described. The plaintiff could have no information from the record, that it was intended to tax the corporation for a house upon other land than that assessed, and which land the defendants claimed no right to tax.

This failure of proper description was not occasioned by the omission of the plaintiff to return a list to the assessors. The corporation denied that it held any property liable to be taxed. The assessors undertook to assert the right to tax certain portions of its real estate, as not covered by the exemption afforded by the statute. They were bound so to designate the specific property as to which they claimed this right, that the corporation might ascertain from their record upon what the tax was intended to be laid. *Torrey* v. *Millbury*, 21 Pick. 64.

For these several reasons, the verdict returned by direction of the court below must be set aside. *Exceptions sustained.*