PRESIDENT AND TRUSTEES OF WILLIAMS COLLEGE *vs.*
ASSESSORS OF WILLIAMSTOWN.

Berkshire.     September 8, 1896. — February 24, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON,
& LATHROP, JJ.

*Tax — " Officers " of College — Non-exemption from Taxation of Property of
College occupied as Residences by Employees of College paying Rent.*

The professors and instructors in a college, although not members of the corpora-
tion, are "officers" of the college, within the meaning of Pub. Sts. c. 11, § 5,
cl. 3, as amended by St. 1889, c. 465, exempting from taxation the real estate
belonging to literary institutions "occupied by them or their officers for the
purposes for which they were incorporated."

Lands with dwelling-houses thereon, owned by a college and occupied as resi-
dences by persons engaged solely in the instruction or government of the college
or in the care of its property, under parol agreements whereby each is to re-
ceive as salary a stated sum monthly and the use of the estate while in the
service of the college, for which use a certain sum is deducted from the amount
of the salary, are not exempt from taxation under Pub. Sts. c. 11, § 5, cl. 3, as
amended by St. 1889, c. 465.

APPEAL to the Superior Court, from the decision of the re-
spondents, on a petition for an abatement of taxes assessed upon
the petitioner's property in Williamstown.   Trial, without a
jury, before *Maynard*, J., who found for the petitioner; and
the respondents alleged exceptions.   The facts appear in the
opinion.

The case was argued at the bar in September, 1896, and
afterwards was submitted on briefs to all the judges except
*Barker*, J.

*J. B. Gale*, of New York, (*C. M. Smith* with him,) for the
respondents.

*M. Wilcox*, for the petitioners.

FIELD, C. J.   This is a proceeding under St. 1890, c. 127, for
the abatement of taxes assessed as of May 1, 1895, upon the
property of Williams College, and it was heard by the Superior
Court upon the report of a commissioner appointed pursuant to
the fifth section of the statute.   The commissioner reported the
facts found by him, with the evidence, and on these facts and

the evidence the presiding justice found for the petitioner, and refused to give certain rulings requested by the respondents.

It was conceded at the argument in this court that Williams College is a literary institution, and that it had complied with the provisions of law necessary to entitle it to an abatement of the taxes assessed upon certain described lots of land with the dwelling-houses thereon, if such lands were exempted from taxation by the statutes.   These lots with the dwelling-houses on them were owned by the college, and were occupied as residences in the following manner: one by the head carpenter and superintendent of the college buildings; one by the librarian of the college; one by the registrar of the college; one by the director of the gymnasium of the college; and the three remaining, each by professors in the college.   The house on each of the lots was especially adapted for use as a dwelling-house, and was occupied as a dwelling-house; the lots were situated near the principal college buildings, and the persons occupying them were all engaged in the instruction or government of the college or in the care of its property, and had no other employment.   " It appeared from the evidence that it is of advantage to the college that its professors and those connected with its service and government should have residences favorably located and adapted for the convenient execution of their services to the college, and that all said places were thus located and adapted."   Of the other professors some own their dwelling-houses, and some hire them of other persons than the college.   The professors, and other persons occupying the dwelling-houses owned by the college, occupied under a parol agreement whereby they were each to receive as salary a stated sum of money per month, and have " the use of the place while in the service of the college."   The papers before us do not show how this service may be terminated.

The commissioner finds as follows:

" It appeared that some of these houses had been during summer vacations prior to the year 1895, and the Mears house was during the summer vacation of 1895, occupied by others than those in the service of the college, but the petitioner had nothing to do with such occupation, and did not receive any compensation therefor.

" In the adjustment of the compensation of the various officers of the college occupying these places for their services, their salaries were fixed at a certain sum, the value of the occupation determined, and said officers were paid monthly, in cash, one twelfth of such salary, less one twelfth of the value of such occupation.

" The total amount of the sums thus deducted from the salaries of the occupants of these seven places, which they would have received if not occupying houses owned by the petitioner, for the year 1895 was $1,917, which sum, President Carter testified, was less than two per cent of the actual value of said places.

" Prior to September, 1894, the officers of the college occupying said places, except Mr. Clark during his occupancy of the Clark place as aforesaid, and Mr. Burr, who occupied the Park Street place, were paid one twelfth of the full amount of their salaries in cash each month, except every third month, when the value of such occupation, as fixed by agreement between the petitioner and such officers in each case for three months, was deducted from that month's salary, and the balance paid in cash.   No money was paid back by the occupant in any instance."

It appears that " 14 cows and a yearling " were also taxed to the college, but the argument relates only to the taxation of the real estate.   It is conceded that the personal property was not taxable.

The exemption is claimed under Pub. Sts. c. 11, § 5, cl. 3, as amended by St. 1889, c. 465.   The college was incorporated in this Commonwealth on June 22, 1793, (St. 1793, c. 15,) and the only question is whether the facts found with the evidence show that these lots of real estate were occupied by the college or its officers for the purposes for which it was incorporated.   By the act of incorporation the corporation of the President and Trustees of Williams College has full power and authority " from time to time to elect a president and treasurer of said college, and such professors, tutors, instructors, and other officers of the said college as they shall judge most for the interest thereof, and to determine the duties, salaries, emoluments, and tenures of their several offices aforesaid," etc.   § 5.

It is argued that the occupants of these dwelling-houses are not officers of the college within the meaning of St. 1889, c. 465. A similar question was left undecided in *Pierce* v. *Cambridge*, 2 Cush. 611. The professors and instructors are not members of the corporation, but we think that they are officers of the college within the meaning of this statute. From the nature of the institution the members of the board of trustees, except the president, usually would not occupy real estate in person for the purposes for which the college was incorporated. Professors and instructors impliedly are called officers of the college in the charter, and when they occupy real estate for the purposes of the college, the occupation may be said to be by the college, or by them as its officers; and perhaps this is true when the occupation is by a head carpenter or superintendent of the college buildings, who is employed by the corporation for its purposes, and who has no other employment. If not an officer, he may, in his capacity of superintendent, properly be called a servant of the corporation, and his occupation for the purposes for which it was incorporated might be that of the corporation.

The most important contention of the respondents is that these occupants were tenants at will of the estates respectively, and that the occupation was for the purpose of a residence, and not for the purposes for which the college was incorporated. A majority of the court are of opinion that this is the true view to take of the facts found by the commissioner, and of the evidence. The petitioner founds its argument upon a distinction taken in the opinion in *Massachusetts General Hospital* v. *Somerville*, 101 Mass. 319, 326. There were several grounds in that case on which the exceptions to the rulings of the court at *nisi prius* were sustained in regard to the building on the land of the plaintiff. As one ground for sustaining the exceptions the court say: " The building, in the present case, was upon land not taxed and apparently exempt from taxation, by reason of the manner in which it was held, in connection with the charitable objects for which the plaintiff was incorporated. The facts in regard to the occupation of the building are imperfectly stated in the exceptions. As the judge ruled that the property was taxable, the facts should be taken to be as claimed by the plaintiff's counsel, at least so far as the jury would have been authorized

to find such facts by the evidence before them. If, as it is claimed in behalf of the plaintiff, the occupation was one merely by reason of service, the building being held as incident only to the general purpose for which the land was held, and occupied by the person charged with the care of the buildings on the hospital grounds, for reasons of convenience; and the rent was paid and received, in the manner stated, as a convenient mode of adjusting the compensation of the person so employed, and not as the income or fruit of an estate granted; we are of opinion that the exemption would still attach to the property. By the ruling of the court below, as we understand it, the question was made to turn upon the single fact of the payment and receipt of rent. This we think was erroneous." A case can be supposed in which the distinction suggested might be important, as, for example, if a professor lived in rooms in the dormitory of a college which remained under the general control of the college, or if a servant lived in the porter's lodge of a college, and a deduction of a certain sum of money on account of such occupation was made from the salary or the wages.

In the present case the occupants were each in the sole occupation of the premises, and the occupation was for strictly private purposes, and the control of the premises during the occupation was with them. That the rent was paid by a deduction made by the college monthly from the salary, instead of being paid directly to the college, is immaterial. It has been held many times that, to exempt the real estate of a corporation under the statutes we are considering, it is not enough that the income is applied to the purposes of the corporation, but the real estate itself must be occupied for those purposes. It is not enough that the corporation derives a benefit from the occupation of the real estate, but the real estate must be occupied by the corporation or its officers for the purpose of carrying into effect the purposes of the corporation. *St. James Educational Institute* v. *Salem*, 153 Mass. 185. *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139, 148. *Chapel of the Good Shepherd* v. *Boston*, 120 Mass. 212. See *Third Congregational Society* v. *Springfield*, 147 Mass. 396. In *Pierce* v. *Cambridge, ubi supra,* the question was whether the real estate was taxable to Pierce as tenant. *Exceptions sustained.*