TRUSTEES OF PHILLIPS ACADEMY *vs.* INHABITANTS OF ANDOVER & others.

Essex.    January 15, 1899. — January 4, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Tax* — *Occupancy of Property of Literary Institution exempting it from Taxation* — *Statute* — *Agreed Facts* — *Assessment for Street Watering* — *Constitutional Law* — *Vote of Town.*

The occupancy contemplated by Pub. Sts. c. 11, § 5, cl. 3, as amended by St. 1889, c. 465, exempting from taxation the real estate belonging to literary institutions " occupied by them or their officers for the purposes for which they were incorporated," means something more than that which results from ownership and possession on the part of the institution, or the use of the property for investment purposes. It must have, or be supposed to have, direct reference to the purposes for which the institution was incorporated, and must tend, or be supposed to tend, directly to promote them.

The agreed facts in this case, which was an appeal from a decision on a petition for the abatement of a tax assessed upon the petitioner's property, are not stated with sufficient fulness to enable this court to pass satisfactorily upon the questions involved, and are therefore discharged, and the case is sent back to the Superior Court for another trial.

The St. 1895, c. 186, authorizing any town the population of which exceeds three thousand, which shall adopt the provisions of the act, to appropriate and spend money for watering its public streets, and to assess upon the estates abutting on the streets so watered the whole or any portion of the cost of such watering, is constitutional.

Where the vote of a town appropriating money for watering streets contains an express reference to St. 1895, c. 186, authorizing such an appropriation, and states that the money is appropriated under that act, the plain meaning of the vote is that the provisions of the act are to be applied in regard to the expenditure that is authorized, and in the absence of anything limiting the amount of the assessment, the fair inference is that the whole cost is to be assessed on the estates which abut upon the streets that are watered.

APPEAL to the Superior Court from a decision of the assessors of the respondent town, on a petition for an abatement of taxes assessed upon the petitioner's property therein. The case

was submitted to that court, and after judgment for the petitioner for a portion of the amount claimed, to this court, on appeal by both parties, upon agreed facts, in substance as follows.

The petitioner is a corporation duly organized under the laws of this Commonwealth for educational purposes, and so much of its real estate as is occupied by the corporation or its officers for the purposes for which it was incorporated was not liable to taxation on May 1, 1897, or at any other time.

The petitioner is the owner of various tracts of land in the respondent town, upon some of which are nine houses.  On May 1, 1897, seven of these nine houses were occupied by professors of the corporation, giving instruction in the Andover Theological Seminary, a department of the corporation.  Each of the seven professors received a fixed salary per annum, and each was allowed the free use of the house occupied by him, and the land connected therewith.  No charge was made to any of the professors for the rent or use of such house and land, and no deduction was made from the fixed salary of either professor, as rental or otherwise, for such use of the house so occupied by him.

The assessors of the respondent town, in May, 1897, assessed a tax upon all the nine houses and lands connected therewith, which was included in the general tax upon the petitioner.  The total general tax assessed upon the petitioner for the year 1897 was $2,896.02.  Of this amount $1,092 was assessed upon the nine houses and land therewith connected.  One of the houses, known as the "Tucker house," was unoccupied on May 1, 1897, but had previously been and now is rented to persons having no connection with the corporation.  One known as the "Park house" was occupied by Professor Park as professor emeritus, but having no duties in connection with the corporation, and paying no rent.  The tax assessed upon the Tucker house in 1897 was $199.50, and upon the Park house was $76.50.

The respondent town, at an annual and regular town meeting prior to 1897, adopted the provisions of St. 1895, c. 186, relating to watering streets.  The assessors assessed upon the petitioner for the year 1897 the sum of $192.27 for its proportion of the expense of watering streets.  Of this amount $52.46 was assessed

upon the seven houses above mentioned, $7.50 upon the Tucker house, $3.69 upon the Park house, and the balance, $128.62, upon the other lands and estate of the corporation.

The petitioner contends that it is entitled by law to have abated from such tax the amount assessed upon the nine houses, namely, the sum of $1,092; and also all of the sum assessed for street sprinkling, namely, the sum of $192.27.

The petitioner paid the tax in full, namely, the sum of $2,896.02, under written protest, and applied to the assessors within the time limited by law for an abatement of so much thereof as they were entitled by law to have abated. The assessors refused to abate any portion thereof, and duly notified the petitioner of this refusal, and the petitioner duly appealed from such refusal, and entered this petition, praying that so much of the taxes claimed to have been illegally assessed upon the corporation or its property be abated.

The petitioner returned a list of its property to the assessors as provided by law.

The Taylor house was conveyed to the petitioner by deed, dated June 23, 1879, in which the grantor, being then a professor, reserved for himself the right to occupy the premises for his lifetime, and a like occupation for his son, John P. Taylor, for his life, free from all rent. John P. Taylor is now a professor in the Andover Theological Seminary. At the time of making the deed, John P. Taylor was not a professor in the Theological Seminary, and the deed does not refer to such a contingency.

The respondent town, at its regular annual March meeting, 1897, appropriated a sum of money, under the provisions of St. 1895, c. 186, for watering its public streets, and duly expended such appropriation for that purpose.

If the court should determine that the nine houses, or that the property of the petitioner, or any of it, was exempt by law from the assessments hereinbefore set forth, then judgment was to be entered in favor of the petitioner for the sum so determined to have been illegally assessed; otherwise the petition was to be dismissed.

The case was argued at the bar in January, 1899, and afterwards was submitted on briefs to all the justices.

*T. H. Russell*, for the petitioner.

*W. Odlin*, for the respondents.

MORTON, J. This case was heard on agreed facts, and the principal question is whether the property for which the petitioner was assessed was exempt from taxation, by virtue of Pub. Sts. c. 11, § 5, cl. 3, as amended by St. 1889, c. 465, which provides that "the personal property of literary, benevolent, charitable, and scientific institutions, incorporated within this Commonwealth, and the real estate belonging to such institutions occupied by them or their officers for the purposes for which they were incorporated" shall be exempt from taxation. There can be no doubt that Phillips Academy is an institution within the meaning of the exempting clause, and that, with perhaps a possible doubt in the case of Professor Park, the persons occupying the various houses were officers of the institution. *Williams College* v. *Williamstown*, 167 Mass. 505. A more difficult question is whether the property was occupied by them for the purposes for which the institution was incorporated.

It is not easy, and perhaps not possible, to define what will constitute such an occupancy under all circumstances, and we shall not attempt it; but there are some general rules and considerations which we deem it proper to state notwithstanding the disposition which is made of this case.

The occupancy referred to usually will result from the official connection of the officer with the institution, and commonly will continue only so long as such connection lasts. The Legislature could have provided, as it did formerly in the case of Harvard College (see Tax Act of 1818 and prior and subsequent Tax Acts), that such occupancy of itself should exempt the estate from taxation, or even that all of the real estate belonging to a favored institution should be exempt. Previous to the adoption of the Revised Statutes this seems to have been the case, — with a qualification after a time in regard to Harvard College and Phillips Academy. The exemptions were incorporated each year in the annual tax act, and the institutions exempted were described by name, except that beginning with 1801 there was in each act a general provision exempting academies established by the law of this Commonwealth. Phillips Academy came under this general provision, but by a proviso in

the St. of 1821, c. 107, § 6, and in succeeding acts, it was provided (and this is the qualification referred to above) that nothing contained in the act should "prevent the Town of Andover from taxing such real estate belonging to the corporation of Phillips Academy situated in said town as shall not be under the immediate occupation and improvement of said corporation or of any person or persons connected with said corporation, exempted from taxation by this act." The persons who were exempted from taxation that were connected, or likely to be connected, with Phillips Academy were ministers of the gospel, preceptors of academies, and Latin grammar schoolmasters. These and other personal exemptions relating to "the president, professors, tutors, librarians, and students of Harvard, Williams, and Amherst Colleges, and of all other theological, medical, and literary institutions," were subsequently repealed by St. 1828, c. 143. The effect of this repeal, so far as Phillips Academy was concerned, seems to have been to cause the omission from the proviso, in subsequent tax acts, of the concluding clause which had provided by implication that real estate belonging to the corporation and occupied by any person connected with it should be exempt from taxation.

By the Revised Statutes, a general rule was established which described in a single phrase the institutions to be exempted, and limited the exemption to the real estate belonging to them and actually "occupied by them or by the officers of said institutions for the purposes for which they were incorporated." Rev. Sts. c. 7, § 5, cl. 2. This statute, with certain additions and amendments not now material, has been continued by successive re-enactments to the present time. It is manifest that, under the Revised Statutes and succeeding statutes, the mere fact that real estate belonging to an exempted institution was occupied by it or by one of its officers could not be regarded as sufficient without anything more to exempt the property from taxation, and it has not been so regarded. *Pierce* v. *Cambridge*, 2 Cush. 611. *Williams College* v. *Williamstown*, 167 Mass. 505. *Amherst College* v. *Amherst*, 173 Mass. 232. In any other view, the words, "for the purposes for which they were incorporated," would be unnecessary and meaningless. The omission from subsequent statutes of the word "actually," which was in

the Revised Statutes, does not affect the construction. *Lynn Workingmen's Aid Association* v. *Lynn,* 136 Mass. 283, 285. Whatever else, therefore, may be said of the occupancy it must be for the purposes for which the institution was incorporated, and this renders it necessary to inquire into the nature and character of the occupancy. If, taking all of the circumstances and all legitimate considerations into account, it can be fairly said that the purpose of the occupancy is that for which the institution was incorporated, then the property is exempt, otherwise not.

The occupancy contemplated by the statute means, we think, something more than that which results from ownership and possession on the part of the institution, or the use of the property for investment purposes. It must have, or be supposed to have, direct reference to the purposes for which the institution was incorporated, and must tend, or be supposed to tend, directly to promote them. In a sense, any occupancy on the part of the institution or its officers may be said to have reference to those purposes and to promote them. But the language of the statute imports, we think, a direct, or what is supposed to be a direct, connection between the occupation and the purposes for which the institution was incorporated, and not an indirect one. It is not enough, for instance, that an income is derived from the occupancy which is applied to carrying on the institution. *Chapel of the Good Shepherd* v. *Boston,* 120 Mass. 212. At the same time the occupancy may be of the kind contemplated by the statute, notwithstanding that as incident to it rent is received, or the pecuniary value to the officer occupying is taken into account in some other manner. *Massachusetts General Hospital* v. *Somerville,* 101 Mass. 319. The distinction lies, it seems to us, between an occupancy which is for the private benefit and convenience of the officer, and which is so regarded by the parties, as in the ordinary case of landlord and tenant, and an occupancy where, although necessarily to some extent the relation of landlord and tenant enters into it, the dominant or principal matter of consideration is the effect of the occupancy in promoting the objects of the institution in the various ways in which such occupancy may or will tend to promote them. In the former case the property would not be exempt, in the latter it

would; and the fact that the institution incidentally derived some pecuniary advantage from the occupancy would not deprive the property of the exemption to which it otherwise would be entitled.

In considering whether property is occupied so as to be exempt, regard may be had, amongst other things, to the situation of the institution. If, for instance, it is so situated that desirable residences are not or may not be easily obtained, and those in charge of it are of opinion that such officers as the best interests of the institution and of those resorting to it require can be more easily obtained if the institution provides places for them to live in, and it does so, this may be taken into account in determining whether the occupancy is for the purposes for which the institution was incorporated. Or again, if with the best interests of the institution as an educational institution in view, and for the purpose of enhancing its advantages to students and of promoting discipline and good conduct and greater freedom of intercourse between students and professors and instructors, those in charge deem it advisable that the president and professors and others connected with the institution should occupy residences in the college yard or in proximity to the college buildings, this also may be taken into account. The dominant purpose of the occupancy under such or similar circumstances may be as truly that for which the institution was incorporated, as the occupancy of buildings for recitation purposes, or for offices, or for other like purposes would be. And the occupancy does not lose what may be termed its institutional character and purpose because as incidental to it the officers and their families are provided with homes for the use and enjoyment of which by them compensation is allowed or taken into account in some manner. In many, if not most, New England colleges and academies the presence of the families of the professors and other officers has been and is regarded as beneficial to the students and as advantageous to the institution. The occupation, therefore, by them as homes of property belonging to such institutions would not necessarily be inconsistent with the spirit and intent of the exempting clause.

In considering the purpose of the occupancy, due weight is also to be given to the intentions of those in charge of the

institution.   The institution can only act through agents.   In *Massachusetts General Hospital* v. *Somerville,* 101 Mass. 319, 322, it is said that " what lands are reasonably required, and what uses of land will promote the purposes for which the institution was incorporated, must be determined by its own officers. . . . In the absence of anything to show abuse, or otherwise to impeach their determination, it is sufficient that the lands are intended for and in fact appropriated to those purposes "; and again, later, " the presumption is in favor of their judgment, and it requires something more than mere difference of opinion, upon a matter of opinion especially confided to them, to overcome that presumption." Their conclusions are not final.   But if consistent with other facts tending to show that the purpose of the occupancy is that for which the institution was incorporated, they well may be allowed to have a controlling effect.

The question whether in any given case the property is or is not exempt is to be determined by considering all of the facts and circumstances; and the intentions and purposes of those in charge of the institution respecting the use and occupation of the property will or may have a material bearing upon the proper determination of the question.

In applying the principles thus laid down, it is clear that not only may premises used by officers as homes for themselves and their families be so occupied by such officers as to be exempt, but also dormitories and dining-halls, and boarding-houses, gymnasiums, and other buildings intended primarily for and actually devoted to the use and benefit of students or those attending the institution for the purposes for which it was incorporated.   The statute is not to be construed narrowly but in a fair and liberal sense and so as to promote that spirit of learning, charity, and benevolence which it has always been one of the fundamental objects of the people of this State to encourage.

We think there is nothing in *Pierce* v. *Cambridge,* 2 Cush. 611, *Williams College* v. *Williamstown,* 167 Mass. 505, and *Amherst College* v. *Amherst,* 173 Mass. 232, necessarily inconsistent with the views expressed above.   In *Pierce* v. *Cambridge,* the question as stated in *Williams College* v. *Williamstown* " was whether the real estate was taxable to Pierce as tenant," etc.   The decision was put on the ground that the facts were such as to create in

Professor Pierce an estate as tenant for which he was taxable. Perhaps the case might have stood equally well on the ground that the occupation appeared to be rather for the private benefit and convenience of Professor Pierce than for the purposes for which the college was incorporated; so in *Williams College* v. *Williamstown* the occupation was held by the majority of the court to be for private purposes. That case stands on its own facts, and was not supposed by a majority of the court to overrule any prior cases or to change the law as it had been previously practised and understood. *Amherst College* v. *Amherst* followed the Williamstown case, and went on the ground that it could not be held as matter of law, which was the ruling of the Superior Court, that the house was exempt, though it was intimated in the opinion that it could have been found "that the dominant purposes of the president's occupation were not private, but those for which the college was incorporated." On the other hand, we think that the conclusions which we have reached are abundantly supported by *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599; *Massachusetts General Hospital* v. *Somerville*, 101 Mass. 319; *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139; and *State* v. *Ross*, 4 Zabr. 497, and *Yale University* v. *New Haven*, 71 Conn. 316. In addition to these cases, the case of *Salem Lyceum* v. *Salem*, 154 Mass. 15, should be referred to. The property in that case was held to be unexempt, but it was stated that "if the principal occupation is by the plaintiff for those purposes (i. e. the purposes for which the plaintiff was incorporated), occasional and incidental use for other purposes might not render it liable to taxation," thus recognizing that it is or may be the dominant purpose which gives character to the occupation. As illustrating still further the effect of intention not only upon the character of the occupation, but as establishing the fact of occupancy for a purpose entitling the property to exemption, see *New England Hospital* v. *Boston*, 113 Mass. 518, and *Trinity Church* v. *Boston*, 118 Mass. 164. See also *Rural Cemetery* v. *County Commissioners*, 152 Mass. 408. In this last case the petitioner, which was a cemetery corporation, was authorized to purchase additional lands to be "applied exclusively" to the objects of the corporation. It purchased land on which there was a dwelling-house and barns, and it was

assessed for the land. At the time of the assessment, no burial lots had been laid out on the land so purchased. But it was held that it could not be said that the land was not devoted exclusively to the objects of the corporation, and that the exemption from taxation of the dwelling-house and barns was justified by the fact that the buildings and their occupation as described were necessary for the business of the corporation and the management of the cemetery, and the property was accordingly declared to be exempt. This case would seem to show that even if the occupation was required to be exclusively for the purposes for which the institution was incorporated (though we do not think it is), an occupation by an officer and his family might be regarded under some circumstances as exclusively for such purposes notwithstanding the element of private benefit. See *White v. Bayley*, 10 C. B. (N. S.) 227.

Whether the occupancy by Professor Taylor should be referred to his life estate or to his connection with the academy as professor, or whether the academy is taxable for its reversionary interest, we do not deem it necessary to consider now.

Down to this point we are all substantially agreed. But some of my brethren think that the facts are not stated with sufficient fulness to enable us to pass satisfactorily upon the subject thus far considered, and that the agreed facts should be discharged and the case sent back, so that the facts can be presented more fully. Others of my brethren and myself are inclined to construe the agreed facts somewhat liberally, and to think that we can decide the case now. But with this expression we yield to the views of those of our brethren who think otherwise, and are content that the agreed facts should be discharged and the case sent back for another trial.

There remains the question as to the street-watering assessments. It is hardly to be expected that any new facts which may be developed will affect that question. It will save time and further trouble, therefore, if we express our opinion on it now, and we see no objection to doing so.

The assessments were made under St. 1895, c. 186, the constitutionality of which is attacked by the plaintiff. A similar question under a similar statute was considered in *Sears v. Street Commissioners*, 173 Mass. 350, and the constitutionality

of the statute was there upheld. We deem it enough on this point to refer to that case. It is settled that local or special assessments like these do not come within the exemptions from general taxation. *Boston Seamen's Friend Society* v. *Boston,* 116 Mass. 181. But it is contended that the provisions of the act were not complied with because the vote appropriating the money for street watering did not provide that the assessors should assess the cost of watering on the estates abutting on the streets that were watered. The vote did, however, contain an express reference to St. 1895, c. 186, and stated that the money was appropriated under that act. We think that the plain meaning of the vote was that the provisions of that act were to be applied in regard to the expenditure that was authorized, and that in the absence of anything limiting the amount of the assessment the fair inference was that the whole cost was to be assessed on the estates that abutted on the streets that were watered. All of the other provisions of the act were duly complied with, and we see no ground on which it can be held that the assessments were invalid.

The result is that the agreed facts are to be discharged and the case is to stand for another trial.                    *So ordered.*