JOHN H. EMERSON *vs.* TRUSTEES OF MILTON ACADEMY.

Norfolk.    March 2, 1904. — April 1, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Tax,* Exemption.

Under R. L. c. 12, § 5, cl. 3, the exemption of the real estate of a literary institution from taxation does not exempt real estate used to produce income to be expended for the purposes of the institution, but does exempt real estate used for one of the purposes for which the corporation was established, and if this is the dominant purpose it is immaterial that there may be incidental results of the use which would not entitle the property to exemption. The dominant purpose of the managing officers of the corporation, so long as they act in good faith and not unreasonably in determining how to use its real estate, will be given effect by the courts.

Under R. L. c. 12, § 5, cl. 3, real estate of the trustees of Milton Academy used for dwelling houses of teachers of the academy with their families as an aid in preserving discipline and in bringing about closer relations with the pupils, the use being allowed as part of the compensation of the teachers, properly can be found to be occupied for the purposes for which the institution was incorporated, and therefore to be exempt from taxation; so can land used for a baseball field and a football field with spaces for spectators, and so can unimproved swampy and thinly wooded land used for recreation by the pupils of the academy.

KNOWLTON, C. J.    This is an action to recover taxes assessed upon the real estate of the defendant corporation in the years 1901 and 1902. The case is submitted upon an agreed statement of facts, with an agreement that the court may draw any proper inferences from the facts stated. From a judgment of the Superior Court for the defendant the plaintiff appealed to this court. The only question is whether the judge was warranted in finding for the defendant upon the competent facts stated.

The judge found that Milton Academy * is a literary institution within the meaning of R. L. c. 12, § 5, cl. 3, and that all the property described in the agreed statement consists of real estate owned and occupied by the academy or its officers for the purposes for which the academy was incorporated. The land in question consists of three lots, the Hunt lot, the Ware lot, and the Vose lot, together containing about thirty-three acres. Besides these the defendant owns the original academy lot, of small

---

* Incorporated March 3, 1798, 2 Special Laws, 227.

area, which is agreed to be exempt from taxation, and another lot not connected with it, which is agreed to be taxable. The plaintiff contends as matter of law that the agreed facts do not warrant a finding that the three first mentioned lots are occupied for the purposes for which the defendant was incorporated.

The law applicable to cases of this kind was considered at some length in *Mount Hermon Boys' School* v. *Gill,* 145 Mass. 139, and more fully in the recent case of *Phillips Academy* v. *Andover,* 175 Mass. 118. It has also been applied under varying conditions in many other cases. *Massachusetts General Hospital* v. *Somerville,* 101 Mass. 319. *Williams College* v. *Williamstown,* 167 Mass. 505. *Amherst College* v. *Amherst,* 173 Mass. 232. *Harvard College* v. *Cambridge,* 175 Mass. 145. The same principle runs through all these decisions. It is that the purposes mentioned in the statute refer to the direct and immediate result of the occupation of the property, and not to the consequential benefit to be derived from the use of it. An occupation and use of real estate to produce income to be expended for the purposes for which the institution was incorporated is not within the statute, while an occupation whose dominant purpose is directly to accomplish some one of the objects for which the corporation was established is within it. If incidentally there are results of the use which would not entitle the property to exemption, that is immaterial, so long as the dominant purpose of the occupation is within the statute. The dominant purpose of the managing officers of the corporation, in the use of the property which they direct or permit, is often, although not always, controlling. So long as they act in good faith and not unreasonably in determining how to occupy and use the real estate of the corporation, their determination cannot be interfered with by the courts. There may be honest differences of opinion among persons of good judgment, as to whether it is wise to use real estate in a particular way for its direct effect in promoting the purposes for which an educational corporation was established. In such cases the managing officers have the responsibility and duty of deciding. A decision plainly unreasonable, which affects the rights of third parties, might be disregarded by the court in a case of this kind, but a decision within the limits of reasonable determination should be given effect.

Upon two of·these lots there were dwelling houses with their appurtenances, occupied by teachers in the academy with their families, under an arrangement with each teacher that he should be paid a stated sum per annum, and in addition should have the use of the dwelling house. It is agreed that the defendant deems it important to have several masters living on the academy premises as an aid in preserving discipline, and in bringing about closer relations with the pupils, and that the arrangements with these teachers were made with this end in view. The corporation has adopted this use of these houses as a settled policy. The three lots in question adjoin the original academy lot and one another, and the boundary fences formerly standing between them have been removed. On the Vose lot a baseball field has been prepared, about two and one half acres in area, with additional space for spectators and less frequent plays when the ball is batted to a long distance, making the whole area about four acres. On the Ware lot there is a football field which, with additional space required for players and for spectators, occupies about two acres. The Vose lot, containing about fourteen acres, was received by gift from Mrs. Sarah Forbes Hughes, and by unanimous vote of the trustees was accepted on the following terms in part, namely: " Said land shall not be built upon, but shall be kept open for a playground for all pupils of said Milton Academy ; except that at any time the said trustees may in their discretion select about one and one fourth (1 1-4) acres of said land near the southerly boundary thereof, for the purpose of building a suitable house and other buildings thereon for the use of the head master of Milton Academy ; except that at any time the said trustees may in their discretion select about one half (1-2) an acre of said land near the northerly boundary thereof, and may place or build and maintain thereon, a building or buildings belonging to said academy ; except that at any time the said trustees may in their discretion select a site near the easterly or southerly boundary thereof, and place or build and maintain thereon, a gymnasium or other athletic building ; and except that said trustees may, if they deem it advisable, convey to the town of Milton, for such consideration as they deem best, such strip or strips of land as may be necessary to. widen the adjoining streets to the limit of one hundred (100) feet or less, but no more.

" If at any future time said Milton Academy shall cease to be a non-sectarian school or shall be removed to other premises than those now occupied by it, all of said land shall be conveyed by the said Milton Academy to the town of Milton for a public playground ; but nothing in this shall be so construed as to give to the town of Milton any rights of any kind whatsoever in regard to said land, until such forfeiture or abandonment shall have taken place."

Of the Ware lot, comprising about sixteen and one third acres, from one third to one half is low and swampy.   This part could be used and improved for buildings or for any purpose requiring a firm dry field, only at large expense.   Of the remainder a part is thinly wooded in places with small trees, growing near together, and in other places with large trees, detached or in small groves, and a part is pasture, with a poor growth of grass and small shrubs.

" The defendant deems it important for the health and enjoyment of the pupils of the academy and essential for the maintenance of the academy and the successful accomplishment of its purposes, that the grounds of the academy should furnish ample opportunity for recreation in the open air, and that the pupils should have at least all the open space now furnished by the academy grounds for exercise and recreation ; and the academy desires to keep at least the whole area of these fields for such use.   The defendant also deems it important for the interests of the academy maintained by it and the successful accomplishment of its purposes, that the school buildings and grounds should be protected against the close proximity of other buildings, and against the possible use of land near the academy for purposes detrimental to the academy.   In the judgment of the defendant's officers, all of the land then and now owned by it, as shown on the plan, was and is required for these purposes.   The pupils do in fact constantly use the unimproved parts of the fields above referred to as recreation grounds, walking and roaming over them, playing games that do not require grounds to be improved or laid out, and going into the swampy part for amusement, and in the winter for some rough skating.   It has always been the purpose of the defendant, since their acquisition, that such use should be made of the fields."

We have no doubt, upon the facts agreed, that the officers of the defendant corporation, in good faith, are occupying and intending to occupy this real estate in a way which they deem directly promotive of the purposes for which the defendant was incorporated.   In view of the location of this academy, the number of its students and the kind of educational work which it was intended to do, we cannot say that the occupation of these three lots in the manner described, with a view to the direct effect, in a broad way, upon the education of the scholars, is so unreasonable as to be forbidden to the trustees under the law. The amount of land so held and used is considerable, and if the corporation was limited by strict necessity, less would be sufficient; but it properly may avail itself of opportunities to provide liberally for the physical training, and the social, moral and æsthetic advancement of the pupils who are intrusted to its charge.   The judge of the Superior Court was authorized by the parties to draw proper inferences of fact, and we are of opinion that he was well warranted in finding that the property was occupied for the purposes for which the defendant was incorporated, within the meaning of the statute relative to exemption from taxation.

The incidental uses, which have been made of the barn and shed and stables * connected with the dwelling houses, do not deprive the property of its exemption from taxation.   These uses are like those which were held permissible, in connection with other uses for educational purposes, in *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599, and in *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139.

*Judgment affirmed.*

*F. Rackemannn & R. W. Dunbar*, for the plaintiff.

*W. H. Dunbar*, for the defendant.

---

* The barn was used by permission of the defendant to store hay cut on the Ware lot and Vose lot, under an arrangement by which the defendant sold the standing grass for small amounts with permission so to store it when cut.   The stable and shed were on the Hunt lot.   The dwelling house was used for a teacher of the academy, but he did not use the stable and shed, and, with his acquiescence, the defendant used them for keeping a lawn roller and various implements for the care of the academy grounds and a horse used to draw the lawn roller and to carry persons and baggage to and from the railroad station and elsewhere in connection with the academy without charge.