## TRINITY CHURCH vs. CITY OF BOSTON.

Suffolk.    March 5. — August 31, 1875.    GRAY, C. J., did not sit.
                    MORTON, J., absent.

A religious society purchased a lot of land in a city for the purpose of building a house
of worship.   The lot was the only one so held, was not more than sufficient for its
reasonable requirements in this respect, and was devoted by the society in good
faith to the erection of a church edifice.   The work was begun by driving piles for
the foundation of the building, and, although reasonable diligence had been used,
no further progress had been made, when a tax was assessed by the city on the land.
*Held*, that the land was exempt from taxation under the Gen. Sts. *c.* 11, § 5, *cl.* 7.
WELLS, J., dissenting.

CONTRACT to recover the amount of a tax paid under protest.
The case was submitted to the judgment of the Superior Court,
and, after judgment for the defendant, to this court, on appeal,
on an agreed statement of facts in substance as follows :

On and before May 1, 1873, the plaintiff, a religious corporation,
duly established under the laws of this Commonwealth, owned a
lot of land on St. James Avenue, in the city of Boston.   On May
1, 1873, the defendant caused certain taxes to be assessed upon
the said lot, which taxes, amounting to $2,313.27, were paid,
under protest, to the treasurer of the city on December 31, 1873.
The work of building a new house of worship on St. James Ave-
nue, to replace the plaintiff's church on Summer Street, destroyed
by the fire of November 9, 1872, was begun on the lot before the
assessment was laid, by driving a part of the piles for the founda-
tion of the edifice, but no further progress had been made in the
erection of the building, that being as far as the work could rea-
sonably be advanced during the winter after the fire, and the
work has been continued with all reasonable diligence ever since.
It was then, and is now, the intention of the proprietors of the
plaintiff corporation to use the lot on St. James Avenue for pur-
poses of religious worship only ; and they have caused the work
of building the new church to be carried on with all reasonable
diligence.   All the land included in the assessment is necessary
for the use of the church and is intended for no other purpose.   A
tax was assessed for the year 1873, on the lot on Summer Street,
on which the church stood previously to the fire, and it was paid,
as that lot had been abandoned as a site for a house of religious
worship.

The lot on St. James Avenue was purchased before the fire of November 9, 1872, and if the church on Summer Street had not been destroyed by that fire the society would have worshipped in that edifice until the new one was completed, in which case the lot on Summer Street would not have been subject to taxation for the year 1873.    The St. James Avenue lot is the only property, belonging to the plaintiff, claimed to be exempt from taxation under the Gen. Sts. *c.* 11, § 5, *cl.* 7.

*R. M. Thompson*, for the plaintiff.

*J. L. Stackpole*, for the defendant.

COLT, J.   The statutes, by which "houses of religious worship" "when owned by a religious society, or held in trust for the use of religious organizations" are exempted from taxation, have been uniformly assumed or construed to exempt the land upon which such houses are erected.   Gen. Sts. *c.* 11, § 5.   St. 1865, *c.* 206.   *Lowell Meeting-house* v. *Lowell*, 1 Met. 538.   The purpose of the statute is to relieve such organizations from the burden of taxation upon property devoted to public uses.   And as the land upon which the building stands is essential to the existence of the structure, it is fairly to be presumed that it was the intention of the Legislature to include it in the provisions of the statute by the phrase "houses of religious worship."

It is not essential that the property thus exempt should be actually used, or should be in a condition to be actually used, for purposes of religious worship.   Such a construction would exclude from the benefits of the statute all unfinished houses of worship, and all which by accident or want of repair had become temporarily unfit for use, or the use of which had for any reason been temporarily suspended.   The occupation for religious purposes, which the statute contemplates, does not require the actual completion of the structure.   And such occupation continues, notwithstanding temporary interruptions in its use.

By a clause in the statute, which is part of the same sentence which secures this exemption, it is provided that "portions of such houses, appropriated for purposes other than religious worship, shall be taxed at the value thereof to the owners of the houses."   And this would seem to imply that it is the appropriation of the property or any part of it to the sacred uses contemplated which secures the exemption.

It has been recently held in *New England Hospital* v. *Boston*, 113 Mass. 518, that land purchased by a charitable institution where measures had been taken preliminary to commencing the erection of a hospital thereon, was occupied by the society for the purposes for which it was incorporated, and so was exempt from taxation under a clause which exempts such property when so occupied.

It is not necessary in this case to define at what stage in the erection of a building the property becomes a house of religious worship, or to say that land only may, under some circumstances, be exempt from taxation, although no building has been actually begun upon it. For a majority of the court are of opinion that real estate held by a religious society, not more than sufficient in extent to meet its reasonable requirements in this respect, and devoted by such society in good faith to the erection of a church edifice; upon which the work of erection already commenced is prosecuted without unreasonable delay; and being all the real estate which is so held, is entitled to the exemption given by the statute. And this upon the facts agreed disposes of this case.

WELLS, J., dissenting. I am unable to agree with my associates in the result to which they have come in this case, or in the reasoning of the opinion by which that result is reached.

The words of the statute, under which this exemption is claimed, are specific and precise. To secure the exemption, the property must be shown to come fairly within the terms of the description adopted by the statute. These are "houses of religious worship." The description includes two essential ideas: first, that of a building or structure capable of containing and covering or sheltering human occupants; second, that it is adapted in its construction, or appropriated in its use to the purposes of religious worship. Both must concur to meet the conditions of exemption. This has been repeatedly held in respect of exemptions from attachment. *Buckingham* v. *Billings*, 13 Mass. 82. *Howard* v. *Williams*, 2 Pick. 80. *Davlin* v. *Stone*, 4 Cush. 359.

It is not enough that articles of property are held and intended and necessary for purposes which the statutes of exemption were intended to promote or protect; they must also correspond with the description by which the exemption is conferred. *Danforth* v. *Woodward*, 10 Pick. 423.

That piles, driven into the earth to make it fit to receive the foundations of a contemplated building, can, by any reasonable interpretation of language, whether in legal or popular phraseology, be said to constitute a " house," is a proposition which I cannot bring my mind to discuss.

The exemption then must rest upon the ground that when the house of religious worship shall have been built upon the land, the land as well as the house will be exempt under the designation contained in the statute. It may be conceded that this would be so ; just as, in case of deeds, the grant of a mill or a house, by that designation only, would carry by implication the land under and around it which is necessary for its enjoyment. But in that case the description is applied to its proper corresponding subject matter ; and, when so applied, it includes the land as an incident to the building, or rather, as necessary to give effect to the grant of the building, and therefore, by intendment of law, passing with it. *Stockwell* v. *Hunter*, 11 Met. 448, 455. *Forbush* v. *Lombard*, 13 Met. 109. *Johnson* v. *Rayner*, 6 Gray, 107, 110. *Esty* v. *Currier*, 98 Mass. 500. But when the principal thing does not exist, the incident, or that which would have been incident if the principal thing had existed, has never been held to be carried by force merely of the terms of such a description. Accordingly it has been held that in leases of buildings or parts of buildings, although a right or interest in the land passes as incident thereto, yet that right ceases upon destruction of the building, unless secured by something in the terms of the lease other than the designation of its subject matter as a building or part of a building. *Stockwell* v. *Hunter, supra. Shawmut National Bank* v. *Boston, ante,* 125. *Rogers* v. *Snow, ante,* 118.

The third clause of exemption, in the Gen. Sts. *c.* 11, § 5, under which the case of *New England Hospital* v. *Boston* arose, differs essentially from this. That clause exempts property of any and every description, if occupied for the purposes for which such institutions were incorporated. The court decided that by the term " occupied " nothing more was intended than that the land should be held or possessed for the purpose indicated ; which was in accordance with the previous decision in *Massachusetts General Hospital* v. *Somerville,* 101 Mass. 319. Under that clause, the whole question depended upon the purpose for which the land was

acquired, or the use for which it was intended. But under the seventh clause it is not enough that the property is intended to be appropriated to the purposes of religion or of religious worship, and held for no other purpose ; it must be a house of religious worship.                    *Judgment for the plaintiff.*