ALL SAINTS PARISH *vs.* INHABITANTS OF BROOKLINE.
SAME *vs.* SAME.

Norfolk.     January 15, 1901. — April 2, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

Under Pub. Sts. c. 11, § 5, cl. 7, exempting from taxation "houses of religious worship owned by a religious society," land purchased by a religious society for the erection of a church thereon for which plans have been prepared is not exempt from taxation until the construction of the church has begun.

A religious society purchased a lot of land containing 40,955 square feet on the corner of a suburban avenue, for the construction of a large stone church thereon, for which plans had been prepared. On account of insufficient funds, the construction of the stone church was not begun for more than two years thereafter, but upon one side of its intended site a small wooden church was built and used for worship, which on the completion of the stone church was to be removed to the corner of the lot to be used for a Sunday school. The assessors of the town, in the two years before the beginning of the construction of the stone church, assessed a tax on twenty thousand square feet of the lot, exempting from taxation the wooden church building and the remainder of the land, not designating by any line of division the land assessed and the land exempted. There was no fence on the premises except that enclosing the whole as one lot. *Held*, in an action by the society against the town to recover back the taxes assessed as above and paid under protest, that the burden was on the plaintiff to show that the whole lot was exempt from taxation, as, if any part of it was taxable, the plaintiff's remedy was by application for an abatement; and that there was no error in assessing the tax upon the portion of the lot which was intended for the erection of the stone church, there being no house of religious worship nor any part of such a house upon it, and it not being shown that the whole lot was needed for the small wooden church or that it was used as a reasonably necessary or proper incident to the maintenance and use of that church. BARKER, J., dissenting, on the ground that the whole lot from the date of its purchase by the parish had been dedicated to public worship, and that the immediate erection and continued use of a temporary wooden church, and the prosecution with all reasonable promptness of the work of building a permanent church, were the same in legal effect as if the stone church had been begun when the wooden one was.

TWO ACTIONS OF CONTRACT to recover back taxes assessed by the town of Brookline for the years 1897 and 1898 upon certain land owned by the plaintiff and paid under protest July 1, 1898, and October 18, 1898, respectively. Writs dated July 6 and October 21, 1898.

The cases were heard in the Superior Court, by *Hardy*, J., without a jury, upon the following agreed facts, subject, however, to all questions as to the competency and materiality of these facts, and upon the offer of proof hereinafter mentioned:

The plaintiff made due demand for the repayment of the taxes before beginning its actions. The plaintiff was incorporated on February 8, 1895, as a religious corporation. By deed dated June 28, 1895, Henry M. Whitney and others, trustees of the West End Land Company, conveyed to the plaintiff a certain parcel of land situated on Beacon Street and Dean Road in Brookline, and bounded northwest on Beacon Street 178.21 feet; northwest, north and northeast by a curved line making the corner of said Beacon Street and Dean Road

30.90 feet; northeast on Dean Road 185.73 feet; southeast 202.61 feet on other land of the trustees, and southwest on land now or late of the estate of Thomas Chamberlin 205 feet; containing 40,955 square feet.

It was provided in the deed that " Said parish by the acceptance hereof, agrees to begin forthwith and proceed with the construction of a church edifice for the use of the said parish on the described premises."

Before the actual purchase of this land the plaintiff had had prepared plans for the construction of a church edifice and parish rooms, the plaintiff then having a bond for a deed from the owners of the land. The plaintiff caused to be erected on the lot a wooden church building which was completed in September, 1895. This building has been continuously occupied and still is used as a house of religious worship. In the meantime unremitting effort was made by the plaintiff to raise sufficient money by subscription for the construction of a stone church building as designed by the original plan. Before May 1, 1898, sufficient money had been subscribed to enable the plaintiff to proceed with the work of building the church edifice provided for by the original plan. On May 31, the plaintiff notified its architects to make quarter scale drawings and specifications to be submitted to builders for their estimates. On June 21, the architects were authorized to proceed with the erection of the first section of the stone church. On September 10, work upon the stone church was begun, and progressed continuously until the autumn of 1899, when it was ready for public worship and has since then been continuously in use, though some work yet remains to be done upon it. Upon the completion of the new church the present wooden church is to be removed to the southwesterly corner of the lot to be used as a Sunday school room, in accordance with the original plans above referred to.

No building has been erected upon any portion of the lot except the wooden church and the stone church now building. There are no fences on the lot except that running around it on the outside, and the land has never been leased or occupied by any parties other than the plaintiff since its purchase by the plaintiff.

On May 1, 1897, and on May 1, 1898, the assessors of Brookline assessed a tax on twenty thousand square feet of the lot, and in each of those years exempted from assessment and taxation the wooden church building and the remainder of the land.

The following plan shows the ground lines of the wooden church and of the stone church on the lot as of December 30, 1899.

There is no separation by fence or otherwise of the part exempted from the part taxed, and all is part of the same lot within the fence enclosing it.  The assessors drew no line of division between the land assessed and the land exempted.

The plaintiff, under its deed from the trustees, assumed the taxes for 1895, which were paid by it.   In 1896 and in 1899 no part of the land was assessed for taxation.

The plaintiff had not at the time of purchasing the land in question, and never had and has not now, any intention of using any part of the land taxed for secular purposes, and the plaintiff

regards and always has regarded the land not already built upon as necessary for convenient ingress and egress, light, air and appropriate and decent ornament, and as necessary to prevent too great proximity of other buildings and uses of the land which might be deleterious. The plaintiff owns no other real estate in the Commonwealth.

The plaintiff offered to introduce the testimony of an experienced architect, a landscape gardener, and of real estate experts who were familiar with and competent to testify to the value of land in the vicinity, tending to show that at the time the taxes were assessed, the entire lot of land owned by the church was not more than was sufficient for convenient ingress and egress, light, air and decent and appropriate ornament for said buildings now on the land, and was necessary to prevent the too great proximity of other buildings and uses of the land which might be deleterious to the church.

Upon objection by the defendant the judge rejected this evidence and found for the defendant, and at the request of the parties reported the cases for the consideration of this court.

If such evidence ought to have been admitted in either or both cases, that case or both cases were to stand for trial. If the ruling rejecting the evidence was right, and the court should be of the opinion that the plaintiff was entitled to recover the tax assessed for the year 1897, judgment was to be entered in its favor for the amount of that tax, to wit: $152.46, and interest thereon from July 1, 1898, in the action brought July 6, 1898; otherwise judgment was to be entered for the defendant in that action. If the rejection of the evidence was right, and if the plaintiff was entitled to recover the tax assessed for the year 1898, judgment was to be entered in its favor for the amount of that tax, to wit: $141.60, and interest thereon from October 18, 1898, in the action brought October 21, 1898; otherwise judgment was to be entered for the defendant in that action.

The cases were argued at the bar in January, 1901, and afterwards were submitted on briefs to all the justices.

*M. R. Sears*, for the plaintiff.

*C. A. Williams*, for the defendant.

KNOWLTON, J. The land owned by the plaintiff at the corner of Beacon Street and Dean Road in Brookline, is in general

dimensions equivalent to a lot a little more than two hundred feet square. It is now used, and is intended to be used, in connection with houses of religious worship erected upon it. On May 1, 1897, when the first tax in controversy was assessed, the plaintiff had not made the financial arrangements necessary to the commencement of the work of building its stone church, and on May 1, 1898, when the next tax was assessed, although sufficient money had been subscribed for that purpose, it had not got its drawings and specifications ready to be submitted to the builders for their estimates, as a preliminary to the making of a building contract. Not until September 10, 1898, was work upon the stone church actually begun. When the taxes in controversy were assessed, the plaintiff, therefore, was the owner of this lot of land, intended to be used as a site for a stone church. Upon one side of it, leaving unoccupied the part intended for the stone church, was a small wooden church, which, on the completion of the stone church, was designed for removal to the southwesterly corner of the lot, there to be used as a Sunday school room.

The question is whether the whole lot was exempt from taxation by reason of the erection of the small wooden church near one side of it and the intention of the plaintiff to erect a stone church to occupy a larger place on the other part of it.

The exemption is claimed under the Pub. Sts. c. 11, § 5, cl. 7, which includes among the kinds of property exempt from taxation, " houses of religious worship." This description has been held to include, as incident to such a house, the land around it reasonably necessary " for convenient ingress and egress, light, air, or appropriate and decent ornament." *Third Congregational Society* v. *Springfield*, 147 Mass. 396, 398. *Trinity Church* v. *Boston*, 118 Mass. 164. In the case last cited this clause of the statute was given a liberal construction in favor of the religious society, in a decision which held that land was exempt which had been procured for the erection of a house of religious worship, and used for that purpose by the preparation of the foundation and the driving of piles and the continuance of the work with all reasonable diligence from the time of beginning it. The decision was put upon the ground that the erection of a house of religious worship had been begun and was being prosecuted

without unreasonable delay, and that therefore there was upon the land a house of religious worship within the meaning of the statute. In that case the land was all reasonably necessary for the church which had been begun. This decision represents the extreme limit to which exemption has been extended under this clause, and it is no authority for an exemption of land procured for this purpose on which there is no house of religious worship, either finished or begun.

In these suits the burden is on the plaintiff to show that the whole lot was exempt from taxation. If any part of it was taxable, the plaintiff cannot recover in these actions. Its remedy, if too large a portion of the land was taxed, or if for any reason the tax was too much, was by an application for an abatement. *Boston Water Power Co.* v. *Boston,* 9 Met. 199. *Hicks* v. *Westport,* 130 Mass. 478. *Richardson* v. *Boston,* 148 Mass. 508. *Schwarz* v. *Boston,* 151 Mass. 226. *Chapel of Good Shepherd* v. *Boston,* 120 Mass. 212. *Kelley* v. *Barton,* 174 Mass. 396.

The agreed facts and the report fail to show that there was any error on the part of the assessors in assessing a tax on twenty thousand square feet of the land, after first exempting the small wooden church and 20,955 square feet of the land as belonging with it in the condition on which the lot then was. The portion of the lot which was intended for use in the erection of the stone church could not be exempted, for there was no house of religious worship, nor any part of such a house upon it.

The evidence which was offered and rejected had no tendency to show that the whole lot was needed for the small wooden church, or that it was used as a reasonably necessary or proper incident to the maintenance and use of that church. We are of opinion that the decision of the Superior Court was correct.

*Judgment on the findings.*

BARKER, J. The plaintiff is a religious society incorporated on February 8, 1895. Its first act was to select the land now its church yard as the place where it would establish the public worship of God. Before acquiring title it procured the plans for its present stone church now thereon. On June 28, 1895, the land was conveyed to it by a deed in which was this clause: " Said parish by the acceptance hereof, agrees to begin forthwith

and proceed with the construction of a church edifice for the use
of the said parish on the described premises." The land so pur-
chased was about two hundred feet square, fronting on Beacon
Street, at its intersection with Dean Road. An exterior fence
surrounds the land which is one lot with no division fences.
Having no other place of worship the parish at once put the
whole lot to the sacred use for which it had been purchased, by
erecting upon it a wooden church building, completed in Sep-
tember, 1895, and since continuously used for religious worship.
Since that time the whole lot has been as a church yard in the
sole occupation of the parish and used by it for the sole purpose
of promoting the public worship of God both in the use of its
temporary edifice and for the purpose of erecting upon it the
permanent stone church. While worshipping in its temporary
church the parish has made unremitted efforts to raise money to
build the permanent one, but notwithstanding these efforts the
work of constructing the stone church was not begun until Sep-
tember 10, 1898. In the meantime the assessors of Brookline,
deeming that the parish had devoted an undue quantity of land
to the worship of God, had assessed twenty thousand square
feet of the church yard for taxes of the years 1897 and 1898.
Whether the taxes so assessed were legal or illegal is the ques-
tion in these cases.

Since the church yard was bought by the plaintiff it has never
been leased nor occupied by any other parties. The parish never
has had any intention of using any part of it for secular pur-
poses, and has always regarded the whole lot as necessary for
convenient ingress and egress, light, air, and appropriate and
decent ornament, and as necessary to prevent too great prox-
imity of other buildings and uses which might be deleterious.
At the trial in the court below the plaintiff offered evidence
tending to show that in fact the whole lot was so necessary,
and this evidence was rejected. No tax was assessed upon the
church yard or the church for the year 1896. In the assess-
ments of 1897 and 1898 the assessors drew no line of division
between the land which they assessed and the land exempted
by them, but assessed a tax upon twenty thousand square feet
of the land, and exempted from assessment and taxation the
wooden church building and the remainder of the land, thus

allowing for God's acre but 20,955 feet and that in a suburban town. Since the year 1898 no tax has been assessed upon either the church yard or the church buildings.

The necessary legal inference from these facts is that the whole lot, from the date of its purchase by the parish to the present time, has been appropriated actually and in good faith by the parish for the sole purpose of public worship, and that the whole lot has been in constant use by the parish itself and only for that purpose and for purposes connected with it.

Such land has never before been subjected to taxation in the territory now comprised within the limits of this Commonwealth, except in the single instance in which in the year 1873 the then newly purchased site of Trinity Church was taxed by the assessors of Boston. That tax was held illegal by this court, not because there was a house of religious worship upon the land taxed, but because the land had been appropriated by its owner, a religious society, to be used for purposes of religious worship, which appropriation this court held secured the statutory exemption. *Trinity Church* v. *Boston*, 118 Mass. 164, 165.

For a period of two hundred and sixteen years the doctrine that the church yard and the church were public works was of itself sufficient to secure for them an unbroken exemption from taxation. Until April 1, 1836, there was no statutory exemption of land or building. Yet neither were taxed, and for the same reason which, without any statutory declaration to this day has exempted court houses, jails, houses of correction, school houses, town houses, and city halls, with their grounds, and also highways, canals, and lands and structures within the location of railroads. The only statutory provisions relating, though remotely to the subject were those which from the year 1799 exempted from taxation, except for parochial purposes, pews in houses of public worship, although the pews were the private property of individuals, which they could lease, mortgage, sell and convey or devise by will at their pleasure, and which could be taken by legal process for the debts of the individual owner. See St. 1799, c. 49, § 2, and the subsequent acts for raising State taxes.

The Revised Statutes for the first time made a statutory provision exempting houses of religious worship from taxation.

Rev. St. c. 7, § 5, cl. 5.   Since that provision went into effect
the courts have treated the exemption as statutory.   It was first
construed by this court in October, 1840, in *Proprietors of South
Congregational Meetinghouse* v. *Lowell*, 1 Met. 538, in which, in
the case of a church and vestry the ground floors of which were
made into six stores or shops and let for trade, it was held " that
the exemption in the statute extended to that part of the prop-
erty only which was used as a place of worship, and for purposes
connected with it," and that it " did not extend to separate tene-
ments used for purposes exclusively secular."   In that case there
was no contention that any part of the land was taxable.

This decision in effect was that not only property actually
used as a place of worship, but property used for purposes con-
nected with it, is exempted by force of the exemption given by
the statute to " houses of religious worship."   That this con-
struction was consonant to the view of the Legislature is shown
by the enactment on March 18, 1841, of St. 1841, c. 127, which
declared, " Whenever any building, now exempt by law from
taxation, is appropriated in part only to the purposes of religious
worship, and in part to other purposes, the owners of such build-
ing shall be taxed according to the seventh chapter of the Re-
vised Statutes, for the value of all parts of such building not so
appropriated to the purpose of public worship."

The general revision of the laws which took effect on June 1,
1860, continued the statutory exemption in these words : " Houses
of religious worship, and the pews and furniture (except for
parochial purposes) ; but portions of such houses appropriated
for purposes other than religious worship shall be taxed at the
value thereof to the owners of the houses."   Gen. Sts. c. 11,
§ 5, cl. 7.

In the year 1865 the clause in question was amended by a
provision that " only such houses of religious worship are ex-
empted from taxation as are owned by a religious society, or held
in trust for the use of religious organizations."   St. 1865, c. 206.

This was the state of the statutes when the case of *Trinity
Church* v. *Boston* came here for decision.   The plaintiff was a
religious society duly incorporated.   It had the lot on Summer
Street on which had stood its church which was destroyed by
the great fire of 1872.   It had abandoned that lot as a site for a

house of religious worship. Before the fire it had purchased the site of its present church, intending to build upon it a new house of worship. The work of building the new house was begun by driving a part of the piles for the foundation, before the assessment was laid, but no further progress had been made in the erection of the building, that being as far as the work could be reasonably advanced during the winter after the fire.

Upon these facts the new site was held by this court to be exempted by force of the statute, the purpose of which, the decision holds was to relieve religious societies " from the burden of taxation upon property devoted to public uses." The court says, " It is not essential that the property thus exempt should be actually used, or should be in a condition to be actually used, for purposes of religious worship. Such a construction would exclude from the benefits of the statute all unfinished houses of worship, and all which by accident or want of repair had become temporarily unfit for use, or the use of which had for any reason been temporarily suspended. The occupation for religious purposes, which the statute contemplates, does not require the actual completion of the structure. And such occupation continues, notwithstanding temporary interruptions in its use."

In that case, as in the present cases, it was not necessary to say whether land only may, under some circumstances, be exempt although no building has actually been begun upon it. In that case a church had been begun, and in the present cases a church had been finished and was in use when the land was assessed for taxes. The court in that case held " that real estate held by a religious society, not more than sufficient in extent to meet its reasonable requirements in this respect, and devoted by such society in good faith to the erection of a church edifice ; upon which the work of erection already commenced is prosecuted without unreasonable delay ; and being all the real estate which is so held, is entitled to the exemption given by the statute." .

In the year 1879 this doctrine was reaffirmed by the court in the case of the *Old South Society* v. *Boston*, 127 Mass. 378, 379. It was there said that the reason of the exemption of unfinished churches and of those temporarily unused is " that, although

the property is not actually in present use for purposes of religious worship, yet it is held in good faith for such uses and none other."

In the year 1880 the court again stated the doctrine thus : " Real estate held by a religious society, not more than sufficient in extent to meet its reasonable requirements in this respect, [that is for purposes of religious worship,] and devoted by such society in good faith to the erection of a church edifice, is entitled to the exemption given by the statute.    But it is the appropriation of the property to the sacred uses contemplated which secures this privilege."    *Redemptorist Fathers* v. *Boston*, 129 Mass. 178, 180.

With all these decisions construing the statute to exempt land devoted by a religious society in good faith to the erection of a church edifice before it, the Legislature must be taken to have reaffirmed the statute as so construed, by re-enacting it in the general revision of the laws made by the Legislature of 1881. See Pub. Sts. c. 11, § 5, cl. 7.

Since that affirmation there has been nothing to change the test of the statutory exemption.    The case of the *Third Congregational Society* v. *Springfield*, 147 Mass. 396, was not one concerning a house of worship, but a parsonage.    The statement in the opinion that " The Legislature intended to limit the exemption to the houses of religious worship alone, or to the portions of an edifice appropriated therefor, and their pews and furniture," must be read with the earlier statement of the same decision that " Undoubtedly within this exemption would be included, not merely the building itself, but a reasonably sufficient territory around it for convenient ingress and egress, light, air, or appropriate and decent ornament."    The decision was not intended to, and did not, overrule the construction given to the statute in *Trinity Church* v. *Boston*, affirmed in *Old South Society* v. *Boston*, and in *Redemptorist Fathers* v. *Boston*, and since uniformly applied until now.    Taken literally the language first quoted would make all church yards taxable, a position for which no one contends.    The later statement in *Harvard College* v. *Cambridge*, 175 Mass. 145, at page 149, " that the exemption was limited to houses of religious worship only " must be read with a like qualification.    In both these decisions the court used

the phrase "houses of religious worship" in the sense which it had decided, in *Trinity Church* v. *Boston*, that they bore. This meaning exempts land owned by a religious society and in good faith appropriated by it to religious worship and purposes connected with it, one of which connected purposes is the ultimate and speedy construction of a permanent building to replace a temporary church actually in use, and the actual beginning of the construction of a house for religious worship upon the land shows conclusively the dedication of the land to public worship. There can be no distinction between the beginning of such a house, and the completion and use in worship of a temporary house, which does not work in favor of rather than against the right to exemption in the present cases.

Upon the facts before us all the land owned by the plaintiff on May 1, 1897, and on May 1, 1898, was but one lot. It was bought for a church yard only, and since its purchase has been held and used only to enable the parish to build and to use upon it in public worship its temporary wooden and its permanent stone church. The immediate erection upon the lot, and the continued use for public worship of a temporary wooden church, with the prosecution with all reasonable promptness of the work of building a permanent church, are certainly no less conclusive of the appropriation of the land to the purpose of religious worship, than the circumstances which were held to be conclusive in *Trinity Church* v. *Boston*. In this case as in that the undisputed facts make it certain that when the tax was laid the whole land was land appropriated to the "sacred uses," which appropriation, in the language of that decision, "secures the exemption."

As the whole of each tax was invalid, the plaintiff was entitled to judgment in each case, and such judgment should be entered in accordance with the terms of the report.