THE OSTEOPATHIC HOSPITAL OF MAINE
*vs.*
CITY OF PORTLAND.

Cumberland.    Opinion, May 21, 1942.

*Jacob H. Berman,*

*Edward J. Berman,*

*Sidney W. Wernick,* for plaintiff.

*W. Mayo Payson,* Corporation Counsel, for defendant.

SITTING: THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MANSER, J. The Osteopathic Hospital of Maine, Inc., was incorporated in 1935 and for some years conducted a hospital on Pleasant Ave. in Portland. Finding the premises insufficient for its expanding needs, the corporation acquired other property in Portland which had been used as a private hospital. This was effected March 15, 1940. The tract of land purchased contains approximately 5 acres and extends from Brighton Ave. to Prospect St. in Portland.

For the purposes of taxation, however, the assessors divided the tract into two parcels, assessing one and exempting the other. The exempted plot has a frontage of 220 ft. on Brighton Ave. and extends back to the rear of two vacant lots which border on Prospect St. Upon this lot are the buildings, and the present hospital is located so that its northerly side wall is 50 ft. southerly of the dividing line. The remainder of the land was taxed. It has a frontage on Brighton Ave. of 185 ft. It contains approximately 2½ acres, and consists of a wooded pine grove and some vacant land, including the two lots fronting

on Prospect St. No actual physical demarcation was made. There are no fences or markers.

By their action the assessors conceded that the Hospital was a benevolent and charitable institution and was entitled to tax exemption of so much of its real estate as was "occupied for its purposes" as provided by R. S., c. 13, § 6, Par. III. The Referee found such to be the fact, and the record amply supports the finding.

The hospital paid the tax under protest and brought this action to recover back the amount paid. The Referee reported that judgment should be for the defendant.

The case comes forward on exceptions to the acceptance of the Referee's report. The gist of the exceptions is that the Court should not have accepted the report because the Referee erred in finding and ruling

that the right of the hospital to tax exemption must be determined in the light of the use being made of the property on the date of the assessment, April 1, 1940;

that the Referee erred in concluding as a matter of law that, under the evidence, the land taxed was not shown to be occupied for its own purposes;

that although the Referee properly found the land taxed was held for intended use by the hospital, it was error to hold that such use was to be at some indefinite future time, and the land was therefore currently taxable.

Aside from a stipulation as to certain facts not now in issue, the record upon which the Referee made his rulings consisted of the testimony of Dr. Campbell, the Treasurer of the hospital. On March 15, 1940 the hospital conveyed the property it then owned to Dr. Westcott and purchased from him the property now owned at the price of $30,000, the original property being valued at $12,500 in exchange. At the time of the conveyance, there were 24 beds in the original hospital and the business having doubled in four years and being consistently

on the increase, the present facilities were obtained. At the time of the hearing, there were 35 beds, an elevator and sprinkler had been installed, and a garage was being remodeled for staff meetings and quarters for hospital interns. The property was bought as one parcel. With reference to utilization of the property, Dr. Campbell testified:

> "We hope to be able in time to enlarge our hospital. We feel certain we are going to have to. (This has reference to the present building which was exempted from taxation.) We will, of necessity, have to provide quarters for our nurses, as a nurses' home. We will build a solarium. Over there near the woods, in the grove, or near the grove, we intend to put rest places where patients may be taken by the nurses during their convalescence. We intend to use the entire hospital property for hospital uses. "

The Doctor further testified that it was not the intention to sell any part of the property or to use it for any purpose not connected with the hospital work. He further said:

> "We had the opportunity of purchasing this property from Doctor Wescott, to give the hospital proper setting, proper quietness, and sufficient land there to meet any necessities for future development, and that is the reason why we exchanged property with Doctor Wescott."

The Referee, evidently relying upon the theory that present use was essential to tax exemption, elicited the fact that the only buildings then occupied were the hospital and garage, and that the grove and vacant land were not in actual use except as patients and nurses walked therein and occupied chairs scattered throughout the grove. Further, that there had been no definite determination as to the location of the proposed solarium and nurses' home, although the witness testified that an appropriate site for the home would be on one of the vacant lots fronting on Prospect St.

The first ruling complained of is as follows:

"All taxes are assessed in this state as of the first day of April of each year. It is the use of the property at the time when a tax is assessed which determines whether the property is or is not exempt from taxation."

Such rule is not arbitrarily controlling or decisive. In *Camp Emoh Associates* v. *Lyman,* 132 Me., 67, 106 A., 59, 60, the plaintiff corporation acquired property for the erection and support of camps for the care, maintenance and assistance of poor and indigent Jewish children. In 1930, the corporation had on its land a group of camps. The property was assessed for taxes. During July and August of that year, upwards of 250 children were at the camps by invitation or assignment. Under these facts, our Court said:

"At the end of the season, the camp was closed, not to be opened again until the next year. The property, it is true, was not in actual use on the day of the assessment, i.e., the first day of April, 1930. To hold that to secure exemption, it must have then been in actual use, would ignore the spirit and intendment of the law. Actual use on that particular day is not the test."

In *Ferry Beach Park Assn.* v. *Saco,* 136 Me., 202, 7 A. (2d), 428, as in the former case of *Ferry Beach Park Assn.* v. *Saco,* 127 Me., 136, 142 A., 65, property found to be definitely devoted to the purposes of the Association was held to be exempt, although in both cases the property was occupied only during the summer months.

As distinctly pointed out in *Camp Emoh Associates* v. *Lyman,* supra, it is the "actual appropriation of its property for the purposes for which the plaintiff corporation was incorporated," not the physical use on the exact date of the assessment, which controls.

Concerning the broader question of exemption by reason of occupation or appropriation of real estate for the purposes of the corporation, confusion sometimes arises by undertaking

to apply identical rules of construction as to tax exemption statutes which are essentially different. Thus in Maine, as in Massachusetts, we find that the statute itself places benevolent and charitable institutions in a different category from purely religious institutions. As to the first group, the law provides, R. S., c. 13, § 6, Par. III:

"The following property and polls are exempt from taxation . . . the real and personal property of all benevolent and charitable institutions incorporated by the state; . . . but so much of the real estate of such corporations as is not occupied by them for their own purposes shall be taxed in the municipality in which it is situated."

The exempting statute as to the second group is found in Par. V of the same section, as follows:

"Houses of religious worship, including vestries, and the pews and furniture within the same, except for parochial purposes; tombs and rights of burial; and property held by a religious society as a parsonage, not exceeding six thousand dollars in value, and from which no rent is received, and personal property not exceeding six thousand dollars in value. But all other property of any religious society, both real and personal, is liable to taxation the same as other property."

The term "real estate" is not found in the exemption of the statute as to the last group. The central purpose is to exempt the church or house of worship and a parsonage of limited value. Even this statute has been sanely interpreted as including the land on which the buildings stand and such as may be necessary for convenient ingress and egress, light, air or appropriate and decent ornament, as the Massachusetts court has held in *All Saints Parish* v. *Brookline,* 178 Mass., 404, 59 N. E., 1003, 52 L. R. A., 778; *Trinity Church* v. *Boston,* 118 Mass., 164; *Third Congregational Society* v. *Springfield,* 147 Mass., 396, 18 N. E., 68, 69.

In the case last cited above, the distinction is clearly pointed out. The exempting statute, of similar import as at present, provided for benevolent and charitable institutions in the third clause, and for religious institutions in the seventh clause of the section. The Court said:

"It will be observed, that religious societies are not included in the enumeration of the third clause, and that the exemption of their property from taxation is found in the seventh clause . . . and it is impossible to extend by construction the operation of the third clause above cited to religious societies."

The procedure of the assessors of Portland in the present case, however, is patterned after that adopted in *All Saints Parish* v. *Brookline,* supra, concerning a religious society. In that case, a corner lot on Beacon St. and Dean Road in Brookline was conveyed to the Society with the provision that a church edifice should be erected on the premises. In the first instance, a wooden church was built on the westerly half. During the year that the tax was assessed, the erection of a stone church was begun, and it was planned that the wooden church would be removed to a corner of the lot to be used as a Sunday School room. There were no fences and the land had never been leased or occupied by any parties other than the plaintiff. There was no intention of using the land taxed for secular purposes. The assessors exempted the wooden church and about 21,000 square feet of land and assessed a tax on the remaining 20,000. The plaintiff offered testimony to show that the entire lot was not more than sufficient for convenient ingress or egress, light, air and decent and appropriate ornament. This evidence was rejected. The decision upheld the assessment. The reason given was:

"The portion of the lot which was intended for use in the erection of the stone church could not be exempted, for there was no house of religious worship, nor any part of such a house upon it.

"The evidence which was offered and rejected had no tendency to show that the whole lot was needed for the small wooden church, or that it was used as a reasonably necessary or proper incident to the maintenance and use of that church."

The case of *Redemptorist Fathers* v. *Boston,* 129 Mass., 178, cited by the defendant and used by the Referee as authority that actual use for the purposes warranting exemption is essential to preclude taxation, also concerned a religious society. Moreover, the facts are entirely dissimilar. This is demonstrated in the statement of the Court:

"The lot of land which, as the plaintiff contends, was wrongfully taxed in this case, has not been so appropriated. No church edifice has been erected upon it, and we do not find upon the facts agreeed that any such edifice is intended to be erected upon it. On the contrary, it was found to be an unsuitable place for the church, and it is the plaintiff's intention to occupy it with one or more light buildings of wood for school purposes. It is separated by a clearly defined lane or passageway from the portion upon which the church stands; it is not necessary or incidental to the use of the church as a house of public worship, and the avowed intention of the plaintiff is to appropriate it to a purpose, which, however useful and praiseworthy in itself, is not public worship, and therefore not entitled to the exemption from taxation provided for in the second clause."

Further, the defendant argued that the "dominant use" principle had application, asserting that the record showed that the property taxed was currently used only for trivial and inconsequential purposes which were subordinate to the dominant purpose that the property be held for future expansion of the hospital. But this is an attempt to contrast two uses for the same general purpose, one actual and the other prospec-

tive. The cases which construe the principle contended for demonstrate that it has application when there are two or more divergent uses to which the property is subjected, one promotional of the charitable purpose and the other of a non-exempt character. Thus we find in *Foxcroft* v. *Campmeeting Association,* 86 Me., 78, 29 A., 951, our Court held that

> "If it be a benevolent and charitable institution, the property used for the stabling of horses for hire, let for victualing purposes and for the use of cottages is clearly not occupied by the association for its own purposes . . . It is property from which revenue is derived — just as much business property as a store or mill would be."

In *Auburn* v. *Y. M. C. A.,* 86 Me., 244, 29 A., 992, of the defendant's real estate, a portion was let for a boarding-house and another portion for stores and it was held that such portions were not exempt from taxation.

Application of the principle to different circumstances, held sufficient to warrant exemption, is found in *Curtis* v. *Odd Fellows,* 99 Me., 356, 59 A., 518, 520, in which the Court said:

> "where a building of such an association is designed for use by it for its own purposes, and a substantial use is made of all of the building by the association for its own purposes, in good faith, the property is exempt from taxation under our statutes, notwithstanding such occupation may not be exclusive, and the owner may sometimes allow other associations and individuals to use some portions of the property for a rental, when it can be done without interfering with the use of the same by the owner for its own purposes."

This statement was confirmed in *Lewiston* v. *All Maine Fair Association,* 138 Me., 39; 21 A. (2d), 625, in which it was held that certain property was non-exempt, and certain other property although temporarily and occasionally used for pur-

poses foreign to the conduct of its Fair was exempt because such use did not interfere with its general occupation for its own purposes.

If the property is not used at all for other purposes, it must be determined whether use was made thereof for its own purposes, which may be shown by incidental uses and by an actual appropriation to the purposes of the owner with a definite intention to broaden the scope of its use thereof in the future, thus counteracting any implication of evasion of taxation.

Upon the whole record such clearly appears to be the case here. True, the exact location of additional buildings has not been determined, or the date of their erection. The Referee recognizes in his report that the tract was acquired in one unit "to give the hospital proper setting, proper quietness and sufficient land there to meet any necessities for future development;" that it was intended to "develop an osteopathic center here in Portland," that there was an existing intention to hold the vacant land as a site or sites for new and additional buildings to take care of its growing business, and that such land was used by convalescent patients, and by nurses and employes. Because these purposes had not all attained fruition, the Referee held that uncertainty as to the time of fulfillment precluded exemption.

The Massachusetts court has given consideration to the claim of tax exemption by benevolent corporations as to large tracts of land held under circumstances analogous to those here existing. Upon the legal principles involved, our own Court has been in agreement with the Court of that jurisdiction.

In *Massachusetts Gen. Hospital* v. *Somerville*, 101 Mass., 319, the Court in construing a statute of like import with our own, held:

"The statute contains no limitation of the amount of real estate that may be thus held exempt from taxation; and we know of no authority under which, or rule by

which, the court can affix any such limitation. The only condition upon which the exemption depends is the proviso as to the purposes for which the real estate is occupied.

"In construing and applying this proviso, the court cannot restrict it to the limit of necessity.The statute does not indicate such an intention on the part of the legislature; and we do not think that any considerations of public policy require us to confine the exemption to narrower limits than the terms of the statute fairly imply. What lands are reasonably required, and what uses of land will promote the purposes for which the institution was incorporated, must be determined by its own officers. The statute leaves it to be so determined, by omitting to provide any other mode. In the absence of anything to show abuse, or otherwise to impeach their determination, it is sufficient that the lands are intended for and in fact appropriated to those purposes.

"In this case, it is manifest that the intention with which the lands in question were purchased and held was to promote the purposes for which the institution was incorporated."

In the above case, the area of lands so held was 110 acres.

So in *Thayer Academy* v. *Braintree*, 232 Mass., 402 at 408, 122 N. E., 410, at page 412, the Court said:

"The dominant purpose of the managing officers of the corporation, in the use of the property which they direct or permit, is often, although not always, controlling. So long as they act in good faith and not unreasonably in determining how to occupy and use the real estate of the corporation, their determination cannot be interfered with by the courts." *Emerson* v. *Milton Academy*, 185 Mass., 414, 415, 70 N. E., 442.

Again, in passing on a situation as to occupation of land similar to that actually existing here, and entirely aside from prospective use, the Court in *Wheaton College* v. *Norton*, 232 Mass., 141, at 148, 122 N. E., 280, 282, said:

"The two and one half acre lot on April 1, 1914, was a grove of old growth pines; it was free from underbrush, had a few benches, was unenclosed, and was used by students and townspeople. It was not used for college purposes except for recreation purposes for students who wished to walk, stroll or saunter there. The judge rightly found and ruled that this tract was exempt within the rule laid down in *Amherst College* v. *Amherst*, 193 Mass., 168," 79 N. E., 248.

We adopt the reasoning of the Court in the above cited cases. In view of the indisputability of the facts and the conclusions to be drawn therefrom, the accuracy of the ruling of the Referee is one of law and is open for consideration by the Court. On the record the plaintiff was entitled to tax exemption.

*Exceptions sustained.*