PENTECOSTAL ASSEMBLY
OF BANGOR

v.

Melvin H. MAIDLOW and the City
of Bangor.

Supreme Judicial Court of Maine.

Argued May 7, 1980.

Decided May 19, 1980.

Eaton, Peabody, Bradford & Veague, Bernard J. Kubetz, Bangor (orally), for plaintiff.

Robert E. Miller (orally), Thomas A. Russell, Bangor, for defendant.

Before McKUSICK, C. J., GODFREY, NICHOLS, GLASSMAN, ROBERTS, JJ., and ARCHIBALD, A. R. J.

GODFREY, Justice.

The issue in this case is whether certain real estate owned by the plaintiff-appellant is exempt from taxation. Appellant is Pentecostal Assembly of Bangor, an independent local church organized as a corporation in 1950 pursuant to the provisions of chapter 53 of the Revised Statutes of 1944, sections 24 to 32.[1] In 1976, the Assembly moved into a new building which serves as its house of worship, school, and administrative office. Soon thereafter, the Assembly consulted with the Bangor chief of police for advice on how to deter vandalism at the new building. By written opinion, the chief replied that the presence of persons living on the grounds would be the best deterrent. He stated that an alarm system was likely to be ineffective.

Following the chief's advice, the Assembly constructed a single-family residence on a one-acre lot formed out of the large lot on which the main church building had been constructed. The custodian of the church and his family have lived in the house since its completion before April 1, 1977. The house is used only as the custodian's residence. The Assembly owns the house and lot and pays all expenses of maintaining the residence, including installments of the mortgage debt, utility bills, and insurance premiums. The custodian is required to live in the residence, which is provided to him free of rent, as a condition of his employment. He is a full-time custodian and security person for the main building. His salary is reduced to take into account his rent-free housing.

Defendant Maidlow, tax assessor for Bangor, assessed a real estate tax on the one-acre lot for the tax year 1977. The Assembly's petition to the assessor for abatement of the assessment, on the ground that the property was exempt from taxation, was denied on February 15, 1978. The plaintiff duly appealed the denial of the abatement to the Superior Court pursuant to the provisions of 36 M.R.S.A. § 845 then in effect.[2] In its petition to the assessor for abatement and in its complaint in Superior Court the plaintiff contended that the property should be exempt as "real estate . . . owned and occupied or used solely" by a "benevolent and charitable institution" within the meaning of subsection (1)(A) of 36 M.R.S.A. § 652, which provides, in pertinent part, as follows:

The following property of institutions and organizations is exempt from taxation:

1. Property of institutions and organizations.

A. The real estate and personal property owned and occupied or used solely for their own purposes by benevolent and charitable institutions incorporated by this State . . . . .

The Assembly advanced no other reason for demanding the exemption and stipulated with the defendants on June 11, 1979, that the only issues before the Superior Court were (1) whether the Assembly was a "benevolent and charitable institution" under 36 M.R.S.A. § 652(1)(A), and (2) whether the property used by the custodian was "occupied or used by" the Assembly solely for its own purposes under the same subsection.

---

1. Now 13 M.R.S.A. ch. 93, subch. II (1974 & Supp.1979–80).

2. Section 845 was repealed by P.L.1977, ch. 694, effective July 1, 1978.

On September 20, 1979, the Superior Court denied the Assembly's prayer for relief, and judgment was entered for the defendants. In its decision, the court stated:

From the evidence produced at trial, this Court finds that although Plaintiff, like other religious organizations, has among its purposes those which would qualify as "charitable" in the widest sense, [citation omitted], it cannot qualify as a benevolent and charitable organization within the scope of 36 M.R.S.A. § 652.

The plaintiff filed a timely notice of appeal to this Court.

■ Taxation is the general rule; exemption from taxation is the exception, "and all doubt and uncertainty as to the meaning of the statute must be weighed against exemption." *Hurricane Island Outward Bound v. Town of Vinalhaven*, Me., 372 A.2d 1043, 1046 (1977). The plaintiff has the burden of establishing an exemption from property taxation. "Exemption is a special favor conferred. The party claiming it must bring his case unmistakably within the spirit and intent of the act creating the exemption." *City of Bangor v. Rising Virtue Lodge*, 73 Me. 428, 433 (1882), quoted in *Holbrook Island Sanctuary v. Inhabitants of Brooksville*, 161 Me. 476, 483, 214 A.2d 660, 664 (1965).

■ The Pentecostal Assembly of Bangor was incorporated under the statutes providing for incorporation of an independent local church. The uncontroverted testimony of its pastor at the hearing in Superior Court makes it plain that the functions of the Assembly include, among other things, the holding of religious services and the education, both secular and religious, of children and adults. The pastor testified also that the Assembly participates with other churches in the support of missions in the Middle East, Colombia, Rhodesia, South Africa, Alaska, and New York City. The Assembly carries on a training program for marriage counselors and a program for senior citizens.

Pointing to all those activities, the Assembly contends that it is a "benevolent and charitable institution" within the meaning of 36 M.R.S.A. § 652(1)(A), set forth above. In particular, it argues that its missionary activities are, as a matter of law, "benevolent and charitable" under the cases upholding the property tax exemption of missionary societies. *E. g., Green Acre Baha'i Institute v. Town of Eliot*, 150 Me. 350, 110 A.2d 581 (1954); *Ferry Beach Park Ass'n v. City of Saco*, 136 Me. 202, 7 A.2d 428 (1939); *Maine Baptist Missionary Convention v. City of Portland*, 65 Me. 92 (1876). However, participating in missionary activities is not the sole or even the primary purpose of the Assembly, which functions basically as a church in accordance with its certificate of incorporation. After the *Green Acre Baha'i* case, *supra*, was decided, the tax laws relating to towns were revised extensively,[3] and the exemption provisions were changed to include, among other things, what is now subsection 1(C)(1) of section 652, providing as follows:

C. Further conditions to the right of exemption under paragraphs A and B are that:

(1) Any corporation claiming exemption under paragraph A shall be organized and conducted exclusively for benevolent and charitable purposes.

■ Even if some activities of the Assembly may be properly classified as benevolent and charitable, it does not meet the condition for exemption prescribed by the quoted subsection: The Assembly was organized as a church in 1950 and is still conducted primarily as a church. The Assembly's by-laws, as amended in 1970, expressly state that it is "intended to be operated exclusively for religious and/or educational purposes as contemplated in Section 501(c)(3) of the Internal Revenue Code." It is well settled that for purposes of exemption from property taxation, religious pur-

---

**3.** P.L.1955, ch. 399, § 1. The former tax laws relating to towns were repealed and replaced by the new legislation. P.L.1955, ch. 399, § 2.

poses are not to be equated with benevolent and charitable purposes. *E. g., Osteopathic Hospital v. City of Portland*, 139 Me. 24, 26 A.2d 641 (1942).

Since the Assembly cannot be characterized as a "benevolent and charitable institution" for purposes of 36 M.R.S.A. § 652(1)(A), we do not reach the question whether the property used by the custodian was "occupied or used by" the Assembly solely for its own purposes. *Maine Medical Center v. Lucci*, Me., 317 A.2d 1 (1974), and related cases are not in point.

During oral argument, appellant advanced the suggestion that the custodian's house might be exempted under subsection (1)(G) of section 652, on the theory that its purpose is to promote the security of the church building itself. However, appellant did not claim exemption on that ground either in its petition to the assessor or, later, to the Superior Court, and the stipulation of June 11, 1979, removed any possibility of such an issue from the case. If the argument has any validity—a matter on which we intimate no opinion—it is not cognizable for the first time on appeal. *Teel v. Colson*, Me., 396 A.3d 529 (1979); *Reville v. Reville*, Me., 289 A.2d 695 (1972).

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.